MARY N. TOWNSHEND, Appellant, *v.* ELLEN L. THOMSON et al., Respondents.

A purchaser at a real estate mortgage foreclosure sale, defective and void as against the owner of the equity of redemption, because he was not made a party to the foreclosure, becomes assignee of the mortgage, and if he lawfully enters into possession of the land purchased he becomes a mortgagee in possession.

A mortgagee thus in possession cannot be ousted or deprived of his rights as such against his will or without his knowledge, by the mere intrusion of the owner of the equity of redemption. To retain such rights his continued possession need not be of such a character as is required by the statute to create a title by adverse possession; if the land be uninclosed he is not bound to inclose or cultivate it. Having lawfully taken possession, his relation to the land is not changed until by some act or omission on his part he intentionally changes it.

So, also, a mortgagee thus lawfully in possession, who has been unlawfully deprived of possession either by the mortgagor or any other intruder, may resume his possession, if he can peacefully, and again hold as mortgagee in possession.

In an action of ejectment to recover a lot of land in the city of New York these facts appeared. In 1827, P., who was then the owner of the lot, conveyed the same to S., taking back a purchase-money mortgage. In 1836, S. conveyed the lot to W., subject to the mortgage. In 1843, W. was adjudged bankrupt, and the official assignee in bankruptcy became his assignee. In 1846, the mortgage given to P. by S. was foreclosed and the lot bid off by P., who went into possession. The assignee was not made a party to the foreclosure suit. P. remained in possession until his death, in 1855. He died intestate, and after his death his children and their successors in interest and tenants continued in possession; this they never voluntarily surrendered or intended to

abandon. The lot was generally uninclosed and was used as a market garden in summer, being unoccupied in winter. They paid the taxes and always claimed title. The said assignee never took actual possession of the lot ; in 1845, he filed a report stating that this and other lots were subject to mortgage, were of uncertain value, and ought to be disposed of ; they were marked worthless in an inventory filed by him, and by entry in his account books, he being dead at the time of the trial, it appeared that he sold the lots, in 1846, for thirteen cents. In 1867, said assignee made a further report stating that P. had foreclosed his mortgage without serving notice on the assignee, and was in possession ; that application had been made to him to procure the bankrupt's interest "for a nominal consideration and the costs  *  *  *  the title hereby sought being of no value to his estate." An order was made for sale of the property at private sale. In 1869, another similar report and application was made, which resulted in an order to sell the lots at public auction ; they were sold and conveyed by the assignee to L. These proceedings of the assignee were instigated by J., defendant's husband, and her attorney herein. In 1870, J., without any title, conveyed the lots to plaintiff. In 1875, J. caused a fence to be put around the lots, which remained a few months and then disappeared. In 1878, J., in compliance with a notice from the commissioner of public works, as agent for his wife, repaired the curb and gutter stones in front of the lot. A witness for plaintiff testified that in 1883 he was in possession of the lots, and that he then took from J. a lease and occupied them thereafter for four years. *Held*, that defendants were at least entitled to the position of mortgagees in possession; and that the action was not maintainable.

(Argued June 15, 1893 ; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 24, 1892, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Townshend* for appellant. Every doubtful fact is to be found in favor of plaintiff. (*Colegrave* v. *N. Y. R. R. Co.,* 20 **N. Y.** 492 ; *Pratt* v. *D. H. M. Ins. Co.,* 130 id. 212 ; *Belton* v. *Baxter,* 58 id. 411 ; *Thurber* v. *H. B.,* etc., *R. R. Co.,* 60 id. 326 ; *Maber* v. *C. P.,* etc., *R. R. Co.,* 67 id. 54 ;

*Stackus* v. *N. Y. C. R. R. Co.*, 79 id. 464; *Hart* v. *H. R. R. Co.*, 80 id. 622; *Payne* v. *T., etc., R. R. Co.*, 83 id. 572; *Harris* v. *Perry*, 89 id. 312.) It was error to direct a dismissal of the complaint. Plaintiff made out a title and right to possession; or, at least, there were questions which should have been submitted to the jury. To raise this point it was not necessary, under the circumstances, for plaintiff to ask a submission to the jury. The rule is otherwise when both parties move for a verdict. (*Becker* v. *Koch*, 104 N. Y. 398; *Train* v. *H. P. Co.*, 62 id. 598; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 id. 212.) At the time of Price's foreclosure, 1845, the title subject to the mortgage was in Waddell as assignee of Williams. (*Landon* v. *Townshend*, 112 N. Y. 98.) The attempted foreclosure by Price in 1845 did not affect the assignee's title, nor give any title to Price. (*Winslow* v. *Clark*, 47 N. Y. 261; *Gage* v. *Brewster*, 31 id. 218; *Robinson* v. *Ryan*, 25 id. 324; *Miner* v. *Beekman*, 50 id. 344.) The discharge of Williams as a bankrupt, on May 27, 1843, did not affect the assignee's title. (*Minot* v. *Thacher*, 148 Mass. 352.) The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until the judgment is satisfied. (*Wayman* v. *Southard*, 10 Wheat. 32; *Lemaster* v. *Keeler*, 123 U. S. 389; *R. G. R. R. Co.* v. *Gomila*, 132 id. 478; *Clark* v. *Clark*, 17 How. [U. S.] 315.) As to the alleged sale by the assignee in 1846, there was no evidence sufficient to overcome the title proved by plaintiff. (*Dodge* v. *T. Co.*, 93 U. S. 379; *Peck* v. *Mallams*, 10 N. Y. 544; *Vrooman* v. *King*, 39 id. 483; *Metcalf* v. *Van Benthuysen*, 3 id. 424; *Kain* v. *Larkin*, 131 id. 312; *Gibney* v. *Marchay*, 34 id. 301; *Hutchins* v. *Hutchins*, 98 id. 64; *Jackson* v. *Miller*, 6 Cow. 753; *McDuffie* v. *Clark*, 39 Hun, 170.) From the time Edward Price took possession in 1847 until his death in 1855, he was in adverse possession. (*Smith* v. *Townsend*, 23 N. Y. 481; *Howell* v. *Leavitt*, 95 id. 622; *Heyward* v. *Judd*, 4 Me. 483.) The mortgage under which Price claimed was extinguished on September 5, 1856, and all claim under the mortgage was then extinct.

(*Martin* v. *Stoddard*, 127 N. Y. 61 ; *Brown* v. *Goodwin*, 75 id. 412 ; *Hoag* v. *Hoag*, 35 id. 471 ; *Hetzel* v. *Barber*, 69 id. 15 ; *Jackson* v. *Rowland*, 6 Wend. 670 ; *Despard* v. *Walbridge*, 15 N. Y. 377, 378.) Edward Price had no title to the land. His right was personal estate. Upon his death that title vested in his administrator, not in his heirs. The administrator had power to foreclose. His foreclosure vested in the purchaser at the sale the rights of a mortgagee only. The purchaser was subrogated to the right of Edward Price as mortgagor, but nothing more. (*Sexton* v. *Breeze*, 135 N. Y. 391 ; *Lockman* v. *Reilly*, 95 id. 70 ; *Valentine* v. *Belden*, 20 Hun, 537 ; *Cook* v. *Ryan*, 29 id. 249 ; *Clarke* v. *Clarke*, 8 Paige, 152 ; *Schoonmaker* v. *Van Wyck*, 31 Barb. 457 ; *Bliss* v. *Johnson*, 94 N. Y. 242 ; *Landon* v. *Townshend*, 112 id. 93 ; 129 id. 166.) The debts of the bankrupt were not barred by lapse of time. (*Charman* v. *Charman*, 14 Ves. 480 ; *Page* v. *Waring*, 76 N. Y. 473 ; *Parker* v. *Sanborn*, 7 Gray, 194.) No possession was claimed in Julia A. Coulter, or those claiming through her prior to 1882. (*Roscoe* v. *Klinger*, 8 W. & S. 178 ; Code Civ. Pro. § 413.) Neither the deed from the assignee of Law nor the deed from Law to plaintiff was void by reason that at the time of its delivery there was an adverse possession under a claim of title adverse to the grantor. (*Stevens* v. *Hauser*, 39 N. Y. 306 ; *Bliss* v. *Johnson*, 94 id. 235 ; *Gross* v. *Welwood*, 90 id. 639 ; *Whiting* v. *Edmunds*, 94 id. 316.) The character of plaintiff's act in inclosing the premises with a fence was a question of fact. (129 N. Y. 183.) It is certain that defendants showed no title. Then if plaintiff showed no title it became a question as to which had prior possession, plaintiff or defendants, and at least this was a question for the jury. (*Allen* v. *Remington*, 2 Saund. 111 ; *Mayor, etc.,* v. *Carlton*, 113 N. Y. 291 ; *Carlton* v. *Darcy*, 90 id. 513 ; *Sabariego* v. *Maverick*, 134 U. S. 298.)

*James Thomson* for respondents. The burden of proof rested on the plaintiff at the trial. (Sedg. & Wait on Eject. § 800 ; *Henry* v. *Reichert*, 22 Hun, 394 ; *Cobb* v. *Lavalle*, 89

Ill. 331; *Holbrook* v. *Nichol*, 36 id. 168; *Boylan* v. *Meeker*, 28 N. J. 297; *Love* v. *Sims*, 9 Wheat. 515; *Jackson* v. *Harrington*, 9 Conn. 86; 2 Greenl. on Ev. § 331; *Watts* v. *Lindsay*, 7 Wheat. 158; *Neudecker* v. *Kohlberg*, 81 N. Y. 296.) The plaintiff entirely failed to show a record title. (*Page* v. *Waring*, 76 N. Y. 473; *Kip* v. *Hirsh*, 103 id. 511; *Young* v. *Bradley*, 101 U. S. 787; *Palmer* v. *Morrison*, 104 N. Y. 136; *Peck* v. *Brown*, 2 Robt. 133; *Stevens* v. *Hauser*, 39 N. Y. 302.) The defendants were entitled to judgment in their favor. (Whart. on Ev. §§ 1153, 1332; Greenl. on Ev. [14th ed.] 46; *Doe* v. *Phelps*, 9 Johns. 169; *Clements* v. *Macheboeuf*, 92 U. S. 418; *Oldham* v. *Wooley*, 8 B. & C. 22; *Roscommon's Claim*, 6 Cl. & F. 97; *Howell* v. *Leavitt*, 95 N. Y. 621; *Mann* v. *Earl*, 4 Gray, 291; Code Civ. Pro. § 1632; 2 Jones on Mort. 1395; Freeman on Void Sales, 52; *Jackson* v. *Minkler*, 10 Johns. 480; *Jackson* v. *Powen*, 7 Conn. 13; *Wing* v. *Field*, 109 N. Y. 654; *Hubbell* v. *Moulson*, 53 id. 227; *Hodgden* v. *Sharron*, 44 N. H. 572; *Burke* v. *Hammond*, 76 Penn. St. 172.) The complaint was properly dismissed at the close of the evidence. (*Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 433; *Bridge* v. *Pierson*, 66 Barb. 514.)

Earl, J. This is an action of ejectment to recover a lot of land situate at the southwest corner of Eighth avenue and One Hundred and Seventeenth street, New York city.

The plaintiff's title does not appear to be very meritorious and the court ought not to be very astute to uphold it. Both parties trace their title back to Edward Price, who took a conveyance of the lot in 1827. The plaintiff claims title under him as follows: In 1835 he conveyed the lot to John Scudder and took back a purchase-money mortgage. In 1836 Scudder conveyed the lot to Ebenezer L. Williams, subject to the mortgage. February 4, 1843, Williams was adjudged a bankrupt upon his own petition, under the Bankrupt Act of 1841, and William C. H. Waddell, the official assignee in bankruptcy, became his assignee, and all his estate at once vested in him; and on the 27th day of May, 1843, Williams received

his discharge from his debts.   On March 1st, 1869, the assignee, by order of the court, sold and conveyed this lot with five other adjoining lots, to George Law, for the consideration of $2,150, and on the 10th day of January, 1873, Law, for the consideration of $500, conveyed the same lots to the plaintiff.

During all these years, more than twenty-six, before the sale to Law, there is no pretense that the assignee had any actual possession of the lots, or that he ever exercised any acts of control or ownership over them, except as follows : February 8th, 1845, he filed a report in which he stated that these six lots, among other assets, were subject to two mortgages and were of uncertain value and ought to be disposed of at public sale without incurring further expense or delay.   It does not appear that any formal order was then made for the sale of the lots.   They were marked worthless in an inventory of the assets made by the assignee.   He being dead at the time of the trial of this action, his account book, found in the possession of the plaintiff's attorney, was put in evidence, in which appeared an entry showing that he had sold the lots on the 23d day of March, 1846, for thirteen cents.   In February, 1867, the assignee presented a further report to the court, in which he stated that an application had been made to him to procure all the interest which the bankrupt had, and which became vested in him as assignee in the six lots, and that Price had foreclosed his mortgage on the lots without serving any notice on the assignee, and had obtained possession of them, and that the application was to procure his interest in the lots for " a nominal consideration and the costs of the assignee and his counsel therein, the title hereby sought being of no pecuniary value to his estate."   Upon this report an order was made for the sale of the property at private sale. In January, 1869, the assignee made another report, in which he stated again that application had been made to him for the purchase of the lots for a nominal consideration and the costs of the assignee and his counsel therein, the title sought being of no pecuniary value to the estate.   Upon this report an order was made authorizing the sale of the lots at public

auction, and as above stated they were sold and conveyed to Law. It is clearly inferable that John Townshend, the plaintiff's husband, and her attorney in this action, instigated these proceedings of the assignee in the years 1867 and 1869, and that he was his friendly counsel therein.

The fact that the lots were not sold for a nominal consideration must have been a disappointment to someone. It is not probable that the man who paid $2,150 for the lots was the person who was seeking to procure them for a nominal consideration. But Law as an obstacle was soon disposed of. On the 5th day of February, 1870, John Townshend, without an atom of record title, and, so far as this record discloses, without any title whatever, conveyed the lots to his daughter, for the consideration of one dollar, by a deed containing full covenants, in which was the statement that the lots were then in the occupation of his tenant, John H. Bischoff. Law's title being thus menaced, he conveyed the lots to the plaintiff at a loss of $1,650, besides interest.

But the final scene in this interesting drama is still to come. Of the purchase money paid by Law, $2,000 was paid to the clerk of the court. Steps were immediately taken by Townshend, as attorney for Wesley S. Yard, receiver of the Trust Fire Insurance Company, to reach this money. The insurance company had obtained against Williams a deficiency judgment on a foreclosure sale for upwards of $2,000 in October, 1842, and that judgment was specified as a liability of the bankrupt in the schedules annexed to his petition to be declared a bankrupt in 1843. Although about 27 years had elapsed since he was declared a bankrupt, this debt had not been proved, and, in fact, no debt had been proved. Now Townshend, appearing as attorney for the receiver, caused the debt to be proved, and such proceedings were taken by him (no other debt having been proved), that the whole $2,000, less costs, about $75, was paid to the receiver in September, 1870.

The result of all these proceedings in bankruptcy was that Mrs. Townshend had a conveyance of the lots, and someone

had the proceeds of the sale by the assignee, and the only loser seems to have been Law, who unwittingly bid off the lots at the assignee's auction sale.

The plaintiff did not seem to be in haste to take possession of the lots, and indeed it does not appear that she ever took possession of them. In 1875 Mr. Townshend first appeared at the lots, and, as he testified, finding them unoccupied, he then caused a fence to be put around them, which remained there a few months and then disappeared. Before the fence was built, according to the testimony of one of the plaintiff's witnesses, the lots were occupied by a gardener, and the fence was built to keep him out. It does not appear whether in building the fence Mr. Townshend acted for himself, or for his daughter, or for his wife. He testified that in 1878 he received a notice from the commissioner of public works to repair the curb and gutter stones in front of the lots, and that in compliance with the notice he made the repairs as the agent of his wife. Frederick S. Wieck, one of the plaintiff's witnesses, testified that he took from Mr. Townshend a lease of the lots in 1883, and occupied them for about four years, and that he was in possession of the lots now in question before he took the lease. It does not appear that in making this lease Mr. Townshend acted for the plaintiff. These are all the acts of ownership exercised over the lots by Mr. or Mrs. Townshend at any time, and neither of them ever paid any taxes upon the lot, or assumed any of the burdens of ownership, except the slight repairs to the gutters in front of the lots.

These are the facts and incidents attending the plaintiff's title to this lot. The chain of title is apparently complete, and we may assume that it must prevail unless it has been subverted by the facts yet to be stated.

As before stated, Price took back a purchase-money mortgage from Scudder, and that mortgage he foreclosed in Chancery. The bill was filed November 21st, 1845, and the decree of foreclosure was entered June 11th, 1846. Price bid off the property, and the master's deed to him was executed Septem-

ber 8th, 1846, and then he went into possession of the property and remained in possession until January 26th, 1855, when he died intestate, leaving several children, his only heirs at law. Scudder and various junior incumbrancers were made defendants in the foreclosure suit. But Waddell was not made a party, and hence, as to him, the foreclosure was ineffectual, and his title remained unaffected thereby. In February, 1858, an action was commenced by one of Price's heirs against the others for a partition of the real estate left by him, including the six lots, and judgment of partition was entered and the property was sold; but no conveyance of this lot was made, probably on account of the defective foreclosure of the mortgage. Thereafter, in December, 1858, for the purpose of perfecting the record title, by foreclosing the rights of Waddell as assignee, an action was commenced by Price's administrator to foreclose the mortgage against him. He was named in the action individually, and not as assignee. He appeared in the action, and on the consent of his attorney a judgment of foreclosure was entered; and in pursuance of that judgment the property was again sold and conveyed to Mrs. Coulter, one of the heirs, January 28th, 1859. This foreclosure was still ineffectual to cut off the rights of the assignee, because he was not made a party in his representative capacity. The foreclosure was, however, believed to be effectual until, in 1889, we held in the case of *Landon* v. *Townshend* (reported in 112 N. Y. 93), that it was ineffectual on the ground stated. The other heirs of Price conveyed their interests in the lots to Mrs. Coulter at various times between the last foreclosure sale and March 25th, 1863. The subsequent conveyances of the lot were as follows: Mrs. Coulter to Donovan, April 10th, 1863; Donovan to Adams, May 8th, 1863; Adams to Whitbeck, March 25th, 1864; Whitbeck to Andrew, April 1st, 1867, and Andrew to William Thompson, March 9th, 1868. Thompson died January 13th, 1872, leaving all his right and title to the lot to these defendants, his widow and children. It thus appears that the defendants' chain of title is complete but for the defective

foreclosure of the Scudder mortgage; and we will assume, without passing upon other grounds of defense presented for our consideration, that the defendants must rely for their defense upon that mortgage and the possession of the lot by them and their predecessors.

A purchaser at a mortgage foreclosure sale, defective and void as against the owner of the equity of redemption because he was not made a party to the foreclosure action, becomes assignee of the mortgage, and if he lawfully enters into possession of the real estate purchased he becomes a mortgagee in possession. (*Robinson* v. *Ryan*, 25 N. Y. 320; *Winslow* v. *Clark*, 47 id. 261; *Miner* v. *Beekman*, 50 id. 337; Thomas on Mortgages [second edition], chapter 8.) Therefore, when Price purchased at the defective foreclosure sale in 1846, he became assignee of the mortgage; and when his administrator again foreclosed the mortgage in 1859, and Mrs. Coulter became the purchaser, she became the assignee of the mortgage; and the mortgage passed to the subsequent grantees of the real estate, and to these defendants upon the death of the last grantee. It is undisputed that Price, under his purchase at the foreclosure sale, entered into possession of this lot and continued to possess it until his death in 1855. His entry was lawful under color of right and was acquiesced in by Waddell, the assignee. After his death his children, including Mrs. Coulter, were in the possession of the lot through their tenants, and that possession, with some interruptions has been continued by these defendants and their predecessors to this day. This lot was generally uninclosed, and was used as a garden by market gardeners. In the winter it was necessarily unoccupied, and in the summers it was cultivated and possessed in that way. Price having taken lawful possession never surrendered his possession. His children took possession from him, and neither they nor any of their successors in the title voluntarily surrendered the possession or ever intended to abandon the possession. They always paid the taxes upon the lot, and always claimed title to the same. Their position as mortgagees in possession having been

once acquired continued unless they in some way surrendered or abandoned it. It was not destroyed by the unlawful interference of Townshend or any other person. It does not appear that they ever acquiesced in or ever knew of his pretended possession or interference with the lot. A mortgagee who has lawfully taken possession of the mortgaged premises cannot be ousted or deprived of his rights as such by the mere intrusion of the owner of the equity of redemption against his will or without his knowledge. There must be some act or omission on his part indicating a change in his position. The mortgagee who has taken lawful possession of the land pledged for his debt is not obliged to stand upon the land with a club to keep off intruders; nor need his continued possession be of such a character as is required by the statute to create a title by adverse possession. If the land be uninclosed he is not bound to inclose it, or to cultivate it. Having taken possession lawfully, with the assent of the mortgagor or his successor, his relation to the land is not changed until, by some act or omission of his, he intentionally changes it. He may abandon or surrender the possession, or what is the same thing, he may acquiesce in the possession of the mortgagor or his successors, thereby indicating his surrender of the pledge. Here there is not an atom of evidence tending to show that any of the parties holding under the mortgage ever intended to surrender the land, or that they knew of any possession by the plaintiff or her pretended agent, or by anyone under a lease from him or her.

So, too, a mortgagee once lawfully in possession of the land, who has been wrongfully deprived of the possession by the mortgagor or any other intruder, may resume his possession if he can and again hold the pledge in possession. Never having voluntarily surrendered or abandoned the possession, he has not lost his right to the possession, and he may again peaceably enter into possession, and thus be restored to his rightful position as mortgagee in possession. Here it is undisputed that these defendants were in possession of the lot at the time of the commencement of this action and for some years prior

thereto. Our conclusion, therefore, is that they are at least entitled to the position of mortgagees in possession, and that hence this action cannot be maintained against them.

As this conclusion is sufficient for the affirmance of this judgment, we do not deem it important to inquire whether the defendants have any other grounds of defense to the action.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.