BENJAMIN CRONER, Appellant, v. SAMUEL F. COWDREY, Respondent.

Where taxes upon land are regularly assessed against one in possession thereof claiming title thereto, and the land is subsequently sold for the non-payment of such taxes, the purchaser acquires a good title as against said party and all persons claiming under him.

A defendant in an action of ejectment, where plaintiff shows a title good as against all the world except the possible right of the state to enforce an escheat, will not be permitted to establish the escheat for the purpose of defeating plaintiff's title.

The state acquired title by escheat to certain land subject to a mortgage. The mortgage was thereafter foreclosed without making the state a party defendant to the foreclosure suit and the purchaser went into possession. The land was subsequently assessed for general taxation against the party so in possession, as against whom the assessment was regular and legal. The land was sold for non-payment of the taxes imposed under those assessments. In an action of ejectment brought

by the purchaser at the sale against the purchaser at the foreclosure sale, *held*, that defendant could claim the rights of mortgagee in possession, but could not set up title in the state to defeat plaintiff's title.

As to whether an escheat of land can be enforced or established by anyone but the state, through its attorney-general in the mode prescribed by statute (Code Civ. Pro. §§ 1977, *et seq.*), *quære*.

(Argued October 4, 1893 ; decided October 17, 1893.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made July 12, 1892, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ira Leo Bamberger* and *W. J. Gaynor* for appellant. The defendants are estopped from denying their ownership, and pretending ownership in the state in order to defeat the taxes. (*Trustees* v. *Smith*, 118 N. Y. 634 ; 85 id. 611.) The exception to the finding of fact, that Nannette Johnson Harrison left no heirs, was well taken. (Laws of 1885, chap. 405, § 4 ; *Ostrander* v. *Darling*, 127 N. Y. 70 ; *Gerard* on Titles [3d ed.], 370, 371 ; *Starum* v. *Bostwick*, 122 N. Y. 48.) The words " if any " in the notice of sale do not vitiate it. (*Abbott* v. *Curren*, 98 N. Y. 665 ; Laws of 1885, chap. 405, § 5.) Part 1, chapter 13, title 1, section 4, Revised Statutes, provides that " All lands belonging to this state or the United States " (sub. 2) shall be exempt from taxation. In 1879 an act was passed (Chap. 191) amending this subdivision so that it should read as follows : " 2. All lands belonging to this state or to the United States, and all vessels enrolled and licensed under and pursuant to the laws of the United States and engaged in the costing trade." By chapter 140, Laws of 1879, this amendatory act was repealed. This repealed the subdivision altogether. (*People ex rel.* v. *Suprs.*, 67 N. Y. 109 ; Suth. on Stat. Const. § 133.) If this provision were still in force, it only exempts from state taxation. (*People ex*

*rel.* v. *Ins. Co.*, 91 N. Y. 574, 584.) The notice of sale (to redeem) was sufficient. (Laws of 1873, chap. 862, § 18; *Kane* v. *City of Brooklyn*, 114 N. Y. 593.) The construction put by the learned trial judge on the act, chapter 435 of the Laws of 1886, is erroneous. (*Billinger* v. *Gray*, 51 N. Y. 610; *People* v. *Hagadorn*, 104 id. 516; *People* v. *Turner*, 117 id. 227.) The trial court erred in admitting the so-called marriage record of the deceased preacher, Legare, to prove that Nannette Johnson was married by him to Harrison in Charleston, S. C., on March 18, 1873. (*Bradford* v. *Bradford*, 51 N. Y. 669; *Dann* v. *Kingdom*, 1 T. & C. 492, 494; *State* v. *Dooris*, 40 Conn. 145–147; *Tucker* v. *People*, 117 Ill. 88–91; *Com.* v. *Morris*, 55 Mass. 391, 394; *Childress* v. *Cutter*, 16 Mo. 24, 45, 46; *Morrissey* v. *Ferry Co.*, 47 id. 521–525; *Maxwell* v. *Chapman*, 8 Barb. 579.)

*F. H. Cowdrey* for respondent. The proceedings on the part of the purchaser at the tax sale (the plaintiff) are invalid. (*Smith* v. *Butler*, 121 N. Y. 213; *Hardman* v. *Bower*, 39 id. 199; *People* v. *Hagadorn*, 104 id. 524; *Stebbins* v. *Kay*, 123 id. 34; *Westfall* v. *Preston*, 49 id. 354, 355; *Bradley* v. *Ward*, 58 id. 406, 407; *Brevoort* v. *City of Brooklyn*, 89 id. 132; *Van Wyck* v. *Seward*, 18 Wend. 395; *O'Gara* v. *Eisenlohr*, 38 N. Y. 303; *Justice* v. *Lang*, 52 id. 328, 329; *People* v. *Shulman*, 80 id. 373; *B. & S. L. R. R.* v. *Sup. of Erie*, 48 id. 99; *Bloom* v. *Burdick*, 1 Hill, 130; *O'Donnell* v. *McIntyre*, 37 Hun, 619; *Lockwood* v. *Gehlert*, 127 N. Y. 250.) The title to the land in question was vested in the state at the time the taxes were levied and at the time of the sale. (*People* v. *F. F. I. Co.*, 25 Wend. 220; *In re Trustees of P. E. School*, 31 N. Y. 588; *Clark* v. *Owens*, 18 id. 442; *Chamberlain* v. *Chamberlain*, 71 id. 427; *Cambreleng* v. *Purton*, 125 id. 610; *Eisenlord* v. *Klien*, 126 id. 563; *People* v. *Hill*, 65 Hun, 423; Greenl. on Ev. § 94; *Pray* v. *Hegeman*, 98 N. Y. 351; *Brinckerhoff* v. *Remsen*, 8 Paige, 487; 26 Wend. 325; *Lewis* v. *Lewis*, 11 N. Y. 220; *Will of Kellum*, 52 id. 517; *Will of Cottrell*, 95 id. 336;

*Wooley* v. *Wooley*, Id. 236 ; *Mitchell* v. *Mitchell*, 77 id. 596 ; *Moultrie* v. *Hunt*, 23 id. 394 ; *Duffy* v. *Wurtz*, 53 id. 556 ; *Cross* v. *U. S. T. Co.*, 131 id. 339 ; *White* v. *Howard*, 46 id. 144, 159 ; *Knox* v. *Jones*, 47 id. 395 ; *Hobson* v. *Hale*, 95 id. 605 ; *Adams* v. *Winne*, 7 Paige, 99 ; *Loomis* v. *Loomis*, 51 Barb. 257 ; *Lathrop* v. *Dunlop*, 4 Hun, 215 ; 63 N. Y. 610 ; *Brown* v. *Clark*, 16 Hun, 559 ; 77 N. Y. 351 ; *O' Gara* v. *Eisenlohr*, 38 id. 303 ; *Brinkley* v. *Brinkley*, 50 id. 192 ; *Bessinger* v. *Chapman*, 88 id. 499 ; *Hynes* v. *McDermott*, 52 id. 41 ; *Blackburn* v. *Crawford*, 3 Wall. 191.) A sale of lands owned by the state for unpaid taxes is void. (*People* v. *Bd. of Assessors*, 111 N. Y. 505 ; Laws of 1886, chap. 435 ; Laws of 1883, chap. 470 ; Const. N. Y. art. 1, § 11 ; *Johnston* v. *Spicer*, 107 N. Y. 196 ; *Smith* v. *City of Rochester*, 92 id. 477 ; *De Peyster* v. *Michael*, 6 id. 499 ; *In re Village of Middletown*, 82 id. 199 ; *People* v. *Hagadorn*, 104 id. 521 ; *Mayor, etc.*, v. *Davenport*, 92 id. 616 ; *Stebbins* v. *Kay*, 123 id. 34 ; *McCluskey* v. *Cromwell*, 11 id. 601, 602 ; *Johnson* v. *H. R. R. R. Co.*, 49 id. 462 ; *Benton* v. *Wickwire*, 54 id. 228 ; *In re Miller*, 110 id. 222 ; *McKuskie* v. *Hendrickson*, 128 id. 558 ; Story on Const. § 1385 ; *People* v. *Otis*, 90 N. Y. 52 ; *Donalds* v. *State*, 89 id. 45 ; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 id. 477 ; *Kerrigan* v. *Force*, 68 id. 385 ; *In re N. Y. E. R. R. Co.*, 70 id. 342 ; *In re G. E. R. R. Co.*, Id. 367 ; *People* v. *Hatfield*, 78 id. 361.)

EARL, J. This is an action of ejectment to recover a lot of land situate in the city of Brooklyn, known as No. 116 Prospect street. The facts of the case are quite complicated, and we must first endeavor to set them forth with accuracy.

Paul Pontau, being the owner in fee of the lot, on April 27th, 1854, executed a mortgage thereon to George B. Meade and Halsey R. Meade to secure the payment of $3,300, with interest, on the 28th day of April, 1857, and that mortgage was duly recorded. Pontau died without heirs about the year 1865 seized of the lot. He left a will by which he devised the lot to his wife Nannette for life, with remainder to his

adopted son, Anthony N. Pontau, in fee. Anthony died before the testator, unmarried and without issue. Nannette, the widow, about 1867, married James E. Johnson. In 1871, by chapter 558 of the laws of that year, the legislature released to her all the interest of the state in the lot, and thus she became seized of the lot in fee. Her husband Johnson died in January, 1871, and in September, 1871, being at the time a widow, she made a will devising the lot to James M. Johnson, the son of her second husband.

In March, 1873, she married James Harrison. He died before his wife, and she died in 1878 without heirs. The Meades assigned the mortgage executed to them by Paul Pontau to James M. Johnson in November, 1869, and he assigned it to Henry W. Bates in November, 1879. In 1880, Bates foreclosed the mortgage by action, making parties defendant " Ann LeCourt, John Doe, Richard Roe, Jane Styles, Thomas Nookes, Rebecca Johnson, Edward Styles and Mary I. Blackwell, whose names are unknown to the plaintiff, unknown heirs at law and next of kin of Paul Pontau, late of the city and county of New York, deceased." Neither the state nor the heirs or devisees of Nannette, Pontau's widow, were made parties to that action. The referee, in pursuance of the judgment of foreclosure, sold the lot and conveyed it to Alexander B. Crane and Louise E. Bates by deed bearing date July 23d, 1880. Subsequently, in May 1881, Crane conveyed his interest in the lot to Mrs. Bates. In February, 1885, Mr. and Mrs. Bates united in a mortgage of the lot to Emily Golder for $2,500, and in the same month Mrs. Bates executed and delivered a deed of the lot to Frances A. Denike. Thereafter, Emily Golder commenced an action for the foreclosure of her mortgage, and under the judgment in that action the defendant, Samuel F. Cowdrey, became the purchaser of the lot and received a deed thereof on the 14th day of October, 1889. Neither James M. Johnson nor the state was made a party defendant in the last foreclosure action. During all these years the lot was possessed as follows: By Paul Pontau from April 27th,

1854, to April 12th, 1855 ; then by Nannette, his widow, to June 6th, 1878 ; then by James M. Johnson to July 23d, 1880 ; then by Alexander B. Crane and Louise E. Bates to May 10th, 1881 ; then by Mrs. Bates to February 11th, 1885 ; then by Frances A. Denike to October 14th, 1889, and then by the defendant, Samuel F. Cowdrey, to the present time. All the persons thus successively in the possession of the lot claimed title thereto.

Nannette's will was made prior to her marriage with Harrison, and by that marriage the will was revoked and thus she died intestate. (2 R. S. 64, § 44 ; *Brown* v. *Clark*, 77 N.Y. 369.) As she died without heirs, whatever interest in real estate she possessed at her death at once escheated to the state, and the title thereto immediately vested in the state by operation of law. (1 R. S. 718 ; 4 Kent's Com. 425 ; *McCaughal* v. *Ryan*, 27 Barb. 376 ; *Ettenheimer* v. *Heffernan*, 66 id. 374.) But the mortgage executed by Paul Pontau in his lifetime being valid, the title of the state by escheat was subject thereto, and if the state had been made a party to the foreclosure of that mortgage the title acquired under the foreclosure sale would have been perfect. But the persons who entered into possession under the foreclosure, defective as to the state because it was not made a party, became mortgagees in possession, and we think this defendant is in a position to claim the rights of a mortgagee in possession under the Pontau mortgage. (*Townshend* v. *Thomson*, 139 N. Y. 152.) Therefore, the state could not maintain an action of ejectment based upon its title by escheat against the defendant to recover the possession of the lot, and the only right it has is to enforce its equity of redemption by an equitable action to redeem from the mortgage. It has never yet asserted its right of redemption or taken any steps whatever to redeem from the Pontau mortgage.

The facts thus far stated show the title and relation of the defendant to the lot.

In 1885 and 1886 the lot was assessed for general taxation, and it is not questioned that the assessment was regular and legal in form against the parties then in possession of the lot.

The taxes imposed under those assessments not having been paid, the lot was sold at public auction in the year 1888 by the registrar of arrears, for the non-payment of the taxes, to the plaintiff, and he claims title to the lot by virtue of a conveyance to him in pursuance of that sale. He was defeated in the courts below on the sole ground that, upon the death of Nannette Harrison in 1878, intestate and without heirs, the title to the lot became vested in the state, and that the lot was, therefore, not legally taxable. So we have the defendant in the possession of the land and claiming title thereto, setting up title in the state by escheat to defeat the title of the plaintiff, based upon a sale for the non-payment of taxes regularly imposed upon this lot, unless they were illegal and void for the reason stated.

We do not think this defense is available to the defendant. Where taxes are regularly assessed against parties in the possession of land and claiming title thereto and the right of possession, and the land is subsequently sold for the non-payment of the taxes thus imposed, the purchaser at the sale gets a good title as against such persons in possession and all persons claiming under them. The plaintiff's title may not be perfect as against the state ; but the defendant is not in a position to dispute it. The state may never enforce the escheat and may never redeem the land from the Pontau mortgage. The amount due upon that mortgage may be more than the value of the land. And we know of no rule of law which will permit the defendant under such circumstances to retain possession of the land and refuse to pay any taxes thereon upon the ground that it is state land, and, therefore, not taxable.

We have assumed that the defendant could establish the escheat in this action, and that his evidence was sufficient for that purpose. But it may well be doubted whether an escheat of land can be enforced or established by anyone but the state, through its attorney-general, in the mode prescribed in statutes carefully framed to protect the rights of heirs at the time unknown or undisclosed. (Code, §§ 1977, *et seq.*) It

would be quite extraordinary to allow a party to establish an escheat in an action where there are no allegations or issues as to the escheat, by methods not allowed to the state, for the purpose of defeating a title good as against the whole world except the possible right of the state to enforce the escheat.

The learned counsel for the defendant also claims that the deed executed to the plaintiff by the registrar of arrears under section 6 of chapter 405 of the Laws of 1885, is invalid because he had not given the notice of sale required by that section. A careful scrutiny of the notice served shows that it is in substantial compliance with the statute, and its service was properly proved. This objection is, therefore, unfounded.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed. _____