PEOPLE v. TROUPE et al. (two cases).

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. COURTS ⊕➡1—"JURISDICTION."

"Jurisdiction" is the power to consider and decide, one way or the other, as the law may require.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1–4, 6–9, 91–106; Dec. Dig. ⊕➡1.

For other definitions, see Words and Phrases, First and Second Series, Jurisdiction.]

2. ESCHEAT ⊕➡6—EJECTMENT—NOTICE—JURISDICTION.

Where the Attorney General brought an action in ejectment to recover real estate as escheated under the provision therefor of Code Civ. Proc. § 1977, and defendant appeared and contested as an heir of the deceased owner, the proceedings resulting in a judgment for defendant, and the Attorney General failed to publish the 12 weeks' notice before the issue

---

⊕➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was tried, as required by section 1978, such judgment was not void for want of jurisdiction in the Supreme Court to try the action, since the notice provision of section 1978 is not a limitation on the jurisdiction of the Supreme Court, but a provision for the protection of the heirs of persons dying possessed of real property, operating only as a condition precedent to the recovery of a judgment by the state.

[Ed. Note.—For other cases, see Escheat, Cent. Dig. §§ 7–17, 24; Dec. Dig. ☞6.]

3. ESCHEAT ☞6—EJECTMENT—JURISDICTION—NOTICE.

That such action by the state is an ordinary action in ejectment, except for the notice provision of Code Civ. Proc. § 1978, involving a determination of the right to possession only as between the parties before the court, and not as between defendant and other claimants, which the Supreme Court has jurisdiction to determine as between the parties before it, though such notice is not given, is shown by a review of section 1984, regulating actions by the people, section 1978 supra, and sections 1979–1980, as to unknown claimants, and the effect of a judgment in such action on them.

[Ed. Note.—For other cases, see Escheat, Cent. Dig. §§ 7–17, 24; Dec. Dig. ☞6.]

Appeal from Special Term, Albany County.

Consolidated action by the People of the State of New York against Isabella L. Troupe and others. Judgments for defendants were vacated, and they appeal. Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Ransom H. Gillet, of Albany, for appellants.

Egburt E. Woodbury, Atty. Gen. (Alfred L. Becker, Deputy Atty. Gen., of counsel), for the People.

WOODWARD, J. Matilda C. Johnston died intestate prior to the 12th day of December, 1904, leaving no issue of her body. One Samuel S. Peck was duly appointed administrator of her estate by the Surrogate's Court of Albany county. On the 12th day of December, 1904, Isabella L. Troupe, claiming to be an adopted daughter, brought an action against the administrator, setting up the contract of adoption between herself and Matilda C. Johnston; the people of the state of New York being made a party to the action, and appearing and answering by the then Attorney General. This action resulted in a judgment, on the 9th day of November, 1906, determining that the said Isabella L. Troupe was the lawfully adopted daughter of Matilda C. Johnston, and that this fact "created a vested future estate in the plaintiff, Isabella L. Troupe, in and to all of the property of which Matilda C. Johnston died seised or possessed, and that said contract established a right of succession thereto in 1870, which, by operation of law, attached to said property immediately upon the death of Matilda C. Johnston."

On the 12th of December, 1904, six months after the above action was commenced, the people of the state of New York brought an action in ejectment under the provisions of sections 1977–1980, both inclusive, of the Code of Civil Procedure, against the said Isabella

L. Troupe and unknown claimants and heirs at law of Matilda C. Johnston, upon the theory that the real estate of which the said Matilda C. Johnston died seised escheated to the state for want of lawful heirs. Issue was joined in this action, and it was moved for trial by the Attorney General as a preferred cause, and was tried and disposed of on the 10th day of January, 1905, though final judgment was not entered until the 5th day of June, 1905. Section 1978 of the Code of Civil Procedure provides that:

The "Attorney General must cause a notice, specifying the names of the parties, and the object of the action, and containing a brief description of the property affected thereby, to be published" in certain newspapers "at least once in each week, for twelve successive weeks, before an issue of fact, joined in the action, is brought to trial; or where judgment is rendered therein in favor of the plaintiff, otherwise than upon the trial of an issue of fact, before final judgment is rendered."

The proper publications were commenced on the 31st day of December, 1904, and the 5th day of January, 1905, and were completed on the 25th day of March, 1905, and the final judgment was entered on the 5th day of June of that year. The issue of fact involved in the action was, however, tried before the completion of the publication. The people of the state of New York appealed to the Appellate Division of the Supreme Court from this judgment, and at the January term of the court, for the year 1906, the judgment was affirmed, and the same was filed in the Albany county clerk's office on the 18th day of July of that year.

Subsequently, and in November, 1906, judgment was entered in favor of the plaintiff in the action of Troupe against Peck, as administrator, and the people of the state of New York, which judgment appears to have been based upon the same testimony as that used in action No. 1, and the then Attorney General, by answer in that action, prayed for the specific performance of the agreement between the plaintiff, Troupe, and Matilda C. Johnston, under which the plaintiff, Troupe, claimed succession to the ownership of the property involved in this action. Following the entry of judgment in the action last above mentioned, and on the 18th day of July, 1907, the Attorney General, in behalf of the people of the state of New York, appealed to the Court of Appeals in action No. 1, and on the 8th day of November, 1908, the then Attorney General and the attorney of Isabella L. Troupe entered into a stipulation that this appeal might be dismissed, without costs to the state, and judgment absolute entered, affirming the judgment of the trial court. Such an order was made, and final judgment of affirmance was duly made and entered thereon on the 25th day of November, 1908, at a Special Term of the Supreme Court held at Albany on that day, and the presumption would seem to arise that the state of New York had no interest in the real estate of which Matilda C. Johnston died seised.

It appears, however, that some time in the year 1909 the real property involved in this litigation was offered for sale, when a Mr. Leggett, of the Attorney General's office, for the first time called attention to the alleged fact that there was a flaw in the title, due to the fact that the trial of action No. 1 had been held prior to the final publica-

tion of the notice required by the provisions of section 1978 of the Code of Civil Procedure. This suggestion on the part of Mr. Leggett appears to have prevented the consummation of the proposed sale, and in the year 1911 a partition action was commenced by Frank H. Bryant to partition or sell the real estate here involved, and this action resulted in a judgment under which the property was offered for sale some time prior to December 22, 1911. One Mary T. McGraw bid in the property, but subsequently refused to complete the purchase, alleging the flaw heretofore mentioned. Mr. Bryant took over the bid and received a deed of the property on the 22d day of December, 1911, and on the 8th day of June, 1912, the complaint in action No. 2 was verified, and the summons, which bears date of June 26, 1912, was not served until the 31st day of December, 1914. On the 9th of February, 1915, Mr. Bryant appeared and answered, and the case took its place upon the Albany Trial Term calendar for the April term of this year. There appears to have been no attempt on the part of the Attorney General to publish the notice required by section 1978 of the Code of Civil Procedure in connection with this second action, nor does it appear that any effort has been made to serve any one with process other than the defendant appellant.

The order here appealed from was granted at the Albany Special Term on the 24th day of April, 1914, and directs that "the decision and judgment in action No. 1, entered in the Albany county clerk's office June 5, 1905," and all of the judgments of affirmance, "and any and all other proceedings had in action No. 1, except the service and filing of the summons and pleadings and the publication of the notice of pendency of the action, be and the same hereby are vacated and set aside as rendered on a trial held without jurisdiction," that "the plaintiff and the Attorney General be and they are hereby relieved from the stipulation dated November 25, 1908, for the dismissal of the appeal to the Court of Appeals and entry of judgment absolute," and that a supplemental summons be issued, bringing in Frank H. Bryant as an additional party defendant in action No. 1, and that actions Nos. 1 and 2 be consolidated, and that in action No. 2 certain incidental amendments be made—the net result of the order being that action No. 1 is revived and action No. 2 is practically discontinued, so that with some changes in the parties, the case is right back where it started in 1904.

[1, 2] The question presented upon this appeal is whether the Special Term had power to thus wipe out the effect of years of litigation on the ground that the original trial was held without jurisdiction. "Jurisdiction," say the court in Geneva Furniture Co. v. Karpen, 238 U. S. 254, 259, 35 Sup. Ct. 788, 59 L. Ed. 1295, "is the power to consider and decide one way or the other, as the law may require;" and it would be a strange doctrine to lay down at this time that the Supreme Court of the state of New York has not jurisdiction of an action in ejectment, such as the Attorney General is directed to commence whenever he "has good reason to believe that the title to, or right of possession of, any real property, has vested in the people of the state, by escheat," etc. Code of Civil Procedure, § 1977. An action in ejectment presupposes a title in the party bringing the ac-

tion. No proceeding is necessary to vest title in the state where land escheats. Ettenheimer v. Heffernan, 66 Barb. 374. It results by operation of law. Croner v. Cowdrey, 139 N. Y. 471, 476, 34 N. E. 1061, 36 Am. St. Rep. 716; State Constitution, art. 1, § 10. The action of ejectment to recover the property is merely to put the state in possession of that which belongs to it whenever, through a defect of heirs, real property reverts or escheats to the people. The only issue, so far as the state is concerned, is whether there has been a "defect of heirs"; if this fact is once established its title is absolute, subject to the rights of creditors, outstanding life estates, and to purchase-money mortgages. Mooers v. White, 6 Johns. Ch. 360; People v. Conklin, 2 Hill, 67; Farmers' Loan & Trust Co. v. People, 1 Sandf. Ch. 139.

This being the situation, it must be evident that the command that the Attorney General shall, under the given facts, commence an action of ejectment to recover the property, contemplates an assertion of the legal rights of the state, and that the further requirement of section 1978 of the Code of Civil Procedure that the Attorney General, after commencing this action in ejectment, "must cause notice, specifying the names of the parties, and the object of the action, and containing a brief description of the property affected thereby, to be published in a newspaper," etc., is designed, not as a limitation upon the jurisdiction of the Supreme Court, but as a protection to the heirs of persons dying possessed of real property within this state. Croner v. Cowdrey, 139 N. Y. 471, 477, 34 N. E. 1061, 36 Am. St. Rep. 716. This is clearly manifest if we look to the Code of Civil Procedure generally.

[3] No one will question that a private individual, bringing an action in ejectment, who invokes the jurisdiction of the Supreme Court in reference to lands within this state, has empowered the court to "consider and decide one way or the other, as the law may require," when he has served his summons upon the proper parties defendant. Section 1984 of the Code of Civil Procedure, which is within the same title as the provisions requiring the Attorney General to act in cases of escheat, provides that:

"An action, brought as prescribed in this title, * * * must be brought in the name of the people of the state; and the proceedings therein are the same, as in an action by a private person, except as otherwise specially prescribed in this title."

That is, an action in ejectment, brought in the name of the people of the state, is subject to the same rules as any other action in ejectment, except that it is made the duty of the Attorney General, after bringing such an action, to "cause a notice, specifying the names of the parties, and the object of the action, and containing a brief description of the property affected thereby, to be published"; and this is clearly not a limitation upon the jurisdiction of the court, but a condition precedent to the right of the state to a judgment in its favor. In action No. 1, as originally brought, it became the duty of the Attorney General, if he would establish the right of the people, the plaintiff in the action, to possession as against persons in possession or heirs

at law, to publish the notice required by section 1978 of the Code of Civil Procedure, and the failure to do this presented merely a question of law, which would have been available to the defendant if properly raised in the event of a judgment against her; but it in no wise limited the jurisdiction of the court to determine all questions of law and fact raised by the pleadings in the action. A failure to perform a condition precedent might be fatal to a judgment in favor of the people of the state, if properly raised, but to permit this neglect of a statutory duty imposed upon the people for the protection of the heirs at law and other interested persons to be availed of for the purpose of enabling the people of the state to again bring the title of these premises into question is to permit the people of the state to take advantage of their own wrong, a thing that is never permitted to a private litigant (Broom's Legal Maxims [8th Ed.] 279), and the statute provides (section 1984) that "the proceedings therein are the same as in an action by a private person."

That this is the correct view of the case, and that the requirement of section 1978 of the Code of Civil Procedure is a condition precedent to the right of the plaintiff to judgment, is apparent when we consider the section more in detail; the notice is to be published twelve successive weeks "before an issue of fact, joined in the action, is brought to trial." This clearly contemplates that an action, as defined by section 3333 of the Code of Civil Procedure, has been commenced and proceeded to the joining of issues, that the court has acquired jurisdiction of both the person and the subject-matter, and that the defendant has put in issue the claim of the plaintiff upon the question of fact upon which the escheat must depend. An action of ejectment, such as the Attorney General is directed to bring, is specially defined by subdivision 20 of section 3343 of the Code of Civil Procedure to refer to "an action to recover the immediate possession of real property"; and the notice is required, not as a condition of the jurisdiction of the court attaching, but as a limitation upon the right of the plaintiff to proceed to the trial of the issue thus raised. The defendant would undoubtedly have a right to insist that the action should not be tried until the plaintiff had complied with the condition, and a judgment rendered against the defendant upon an issue of fact thus raised would, no doubt, justify a reversal of the judgment; but such reversal would rest, not upon a lack of jurisdiction—in which case the judgment would be of no avail whatever (Matter of Will of Walker, 136 N. Y. 20, 29, 32 N. E. 633)—but upon a failure upon the part of the plaintiff to establish the condition on which the judgment must rest.

Looking to the alternative provision "or, where judgment is rendered therein *in favor of the plaintiff,* otherwise than upon the trial of an issue of fact, before final judgment is rendered," we see that the condition does not relate to the trial, as of an issue of law raised by demurrer, or taking judgment by default, but simply to the entry of final judgment. If the defendant in action No. 1 had defaulted, for instance, it would have been necessary to await the full time of publication, and the fulfillment of the same, before judgment could be entered in favor of the plaintiff; but if the defendant had de-

murred to the complaint upon some defect of law in the statement of a cause of action, there would be nothing in the provisions of section 1978 of the Code of Civil Procedure to require the publication of the notice as a condition of entering judgment in favor of the defendant. That would follow as in a private action, and the whole purpose of the notice was to prevent the taking of judgment against unknown or undisclosed heirs. Croner v. Cowdrey, supra.

This more fully appears by the provisions of sections 1979 and 1980 of the Code of Civil Procedure. The first of these provides that:

If "the property is not occupied, and no person is known to the Attorney General as claiming title thereto, the defendant or defendants may be designated as 'unknown claimants,' without any other description," but that, "in all other respects, section four hundred and fifty-one of this act applies to an action in which the * * * defendants are thus designated."

Section 451 of the Code of Civil Procedure provides for cases in which the plaintiff is ignorant of the name or a part of the name of a defendant, where he may use a fictitious name, subject to amendment when the real name is developed, and then section 452 of the Code of Civil Procedure provides that:

"The court may determine the controversy, as between the parties before it, where it can do so without prejudice to the rights of others, or by saving their rights; but where a complete determination of the controversy cannot be had without the presence of other parties, the court must direct them to be brought in."

This provision, governing the proceedings as between private litigants, is controlling as between the people of the state and the defendant in an action of ejectment, for it is not "otherwise specially prescribed by this title." Code Civ. Proc. § 1984.

Obviously, in an action of ejectment brought by the people of the state, where the Attorney General did know that Isabella L. Troupe was "claiming title thereto," and where she was made the defendant, with "unknown claimants and heirs at law of Matilda C. Johnston," and where Isabella L. Troupe actually appeared and answered, the case was governed, not by section 1979 of the Code of Civil Procedure, but by section 451, in so far as it related to "unknown claimants and heirs at law"; and this section, in turn, is governed by the provisions of section 452, and the court, having the plaintiff and the defendant Troupe before it, could determine the controversy between them without in any manner prejudicing the rights of "unknown claimants and heirs at law of Matilda C. Johnston," for a determination that Isabella L. Troupe was an adopted daughter of said Matilda C. Johnston, while sufficient to defeat the plaintiff's action in ejectment on the ground of an escheat, did not in any manner prejudice the rights of any unknown claimants and heirs at law as between the defendant Troupe and themselves, for section 1980 specially limits the effect of the judgment in such an action to a case where "final judgment in favor of the people is rendered against unknown claimants, and the real property recovered thereby is afterward sold and conveyed, under the direction of the commissioners of the land office," in which case

"the judgment is conclusive upon the title of that property, as against all persons, except those who commence an action of ejectment for the recovery thereof, or of a part thereof, within five years after the final judgment was rendered in the action in favor of the people, and the judgment roll was filed thereupon." The provision above quoted preserves the rights of "unknown claimants" for a period of five years where the people succeed, while, as between the defendant and "unknown heirs," the judgment in favor of the defendant could have no effect whatever, as no issue was raised between them. The only controversy was between the people of the state and the known and unknown defendants, and the issue was whether there were any heirs to the estate of Matilda C. Johnston; what the rights of such might be, as between themselves, had no place in this action of ejectment, and the court at Special Term erred in holding that the Supreme Court, at Trial Term, was without jurisdiction of the persons and the subject-matter of this action, and, as all of the questions of law available to the plaintiff must be deemed to have been disposed of upon the appeals which have been determined in favor of the defendant's title, the order appealed from should be reversed.

Order reversed, with $10 costs and disbursements. All concur.