## UNITED STATES v. PERPIGNANO.
### No. C–10882.

United States District Court
D. New Jersey.
Sept. 23, 1949.

---

Alfred E. Modarelli and John J. Barry, Newark, N. J., for plaintiff.

Armstrong & Mullen, Jersey City, N. J., for defendant.

LEDERLE, District Judge.

1. Complaint was filed herein on December 1, 1947 for the recovery of the sum of $279.94, plus interest at 6 per cent per annum from May 7, 1936 upon a negotiable promissory note made in New Jersey, dated October 15, 1935, payable in twenty-four monthly installments of $13.54 each to the order of Equitable Service Corporation. Joseph Perpignano, a resident of this District, was named as the sole defendant. The note in question was prepared on a printed form and read, in part, "I/we, jointly and severally, promise to pay", and was signed in the handwriting of defendant, as follows:

> "Cedar View Lodge, Inc.
> "Joseph Perpignano"

The note was unconditionally endorsed by Joseph Perpignano, and contained a statement waiving presentment, demand, protest, and notice of protest and nonpayment.

2. The note in question was endorsed by the payee, Equitable Service Corporation, to the Orange First National Bank on the day following its issue, namely, on October 16, 1935.

3. Defendant claims the equipment installed by the payee, payment for which was evidenced by the note, did not operate properly. When the Orange First National Bank acquired said note, it did so in good faith and for value, without any notice of infirmity in it or any defect in the title of the payee and without notice or knowledge of any facts regarding a breach or contemplated breach of the contract for which the note was given which would have put it upon inquiry.

4. There is no evidence of any bad faith on the part of any officer, agent or employee of the Orange First National Bank.

5. The first installment of the note became due on November 15, 1935, and was paid on November 16, 1935 to the Orange First National Bank. The second payment, due December 15, 1935, was paid December 17, 1935 to said Bank. No further payments were made upon the note.

6. A report of the purchase of this note was made to the Federal Housing Administration by the Orange First National Bank on October 17, 1935. The purpose of this report was to qualify the loan for which the note was given for insurance under the provisions of Title 1 of the National Housing Act, 12 U.S.C.A. § 1701 et seq., and it became so insured.

7. The note being in default, it was assigned to the plaintiff on April 21, 1936, by the Orange First National Bank for a valuable consideration in accordance with the aforesaid National Housing Act insurance provisions.

8. There is now due upon said note the sum of $279.94, together with interest thereon at the rate of 6 per cent per annum from May 7, 1936.

9. A number of defenses were raised by defendant; namely, (1) that the note in question was made by and for Cedar View Lodge, Inc., without intention upon the part of defendant or the payee of the note that defendant should be regarded as a maker of the note. This position of defendant was substantiated by his own testimony that he signed solely as an officer for the named corporation, and the testimony of an official of the Orange First National Bank that the note was transferred to such bank by the payee and reported to the United States Government by the bank as a note made solely by said corporation and endorsed by said defendant; (2) that the Statute of Limitations barred this action; (3) that there had been no presentment, demand, protest, notice of protest or non-payment; and (4) that the note was secured by a chattel mortgage upon one Model "A" Sodator installed by the original payee of said note in the premises of Cedar View Lodge, Inc., for the payment of which this note was given, and that the equipment had been seized by the original payee of the note, Equitable Service Corporation, from the defendant as officer of the Cedar View Lodge, Inc., subsequent to the time that defendant knew the note had been transferred to the Orange First National Bank. Such seizure was without the knowledge or consent of either plaintiff or said bank. Plaintiff claims there were technical defects in the mortgage instrument. However, the conclusion here reached renders a decision of this point unnecessary.

### Conclusions of Law

1. This is a civil suit brought by the United States Government against a resident of this District, over which this court has jurisdiction. 28 U.S.C.A. § 1345.

2. The Orange First National Bank was a holder in due course of the note in suit. N.J.S.A. 7:2–52; United States v. O'Hara, D. C., 46 F.Supp. 780; United States v. Hansett, 2 Cir., 1941, 120 F.2d 121.

3. Where a holder of a negotiable instrument, not a party to any fraud or illegality affecting the instrument, derives title through a holder in due course, as did plaintiff here, such holder has all the rights of such former holder in due course in respect to all parties. N.J.S.A. 7:2–58;

United States v. O'Hara, D. C., 46 F.Supp. 780.

4. A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against any party liable thereon, and plaintiff, by virtue of taking from a holder in due course, has like rights against the defendant herein. N.J.S.A. 7:2–57; United States v. O'Hara, D.C., 46 F.Supp. 780.

5. Counsel for both parties cite various cases from other jurisdictions indicating a division of authority as to whether or not parol evidence is admissible to explain that a note signed as is the note in suit was intended to be the sole obligation of the corporation as maker and that the individual adding his signature beneath the name of the corporation did so only as an officer of the corporation and not as an individual maker. See: 8 Am.Juris. 227, Sec. 482 et seq., and note at 113 A.L.R. 1364. However, this problem has been settled by two decisions of the New Jersey courts, one decided prior to passage of the Uniform Negotiable Instruments Act, and the other decided since that time. In the case of Kean v. Davis, 1847, 21 N.J.L. 683, at page 688, 47 Am. Dec. 182, the court cites with approval a statement from Palmer v. Stephens, 1845, 1 Denio, N.Y., 471 (incorrectly referred to as Palmer v. Stevens, 1 Davies 471), that parol evidence was properly admissible to show that a note reading, "We promise to pay" and signed,

"G. Stephens
"W. G. S."

was signed by defendant William G. Stephens, with intent that only the company of G. Stephens & Sons was the maker and that defendant signed only as their duly authorized clerk. The Uniform Negotiable Instruments Law was adopted by New Jersey in 1902. In Weinstein v. Bobker, 1935, 115 N.J.L. 187, 178 A. 752, a holder of a note was suing David Bobker as endorser. The trial court entered a judgment for the defendant upon his motion to strike a complaint because the plaintiff showed ownership by delivery only from a bank which was an intermediate holder of the note. Upon appeal, this judgment was reversed, and the court held that the note could be transferred by delivery only. The note in question read:

"$900.00                    June 14, 1929.
    "Three weeks after date we promise to pay to the order of ourselves
    "Nine hundred and no/100 dollars at Weequahic Trust Co.
    "Value received with interest.
                "B-W Holding Co. Inc.
                ·M. Weinstein, Pres.
                D. Bobker."
Endorsed on reverse side:
"M. Weinstein        · .
"D. Bobker
"M. Weinstein
"D. Bobker."

On page 753 of 178A. the court stated: "Respondent argues that the note was not negotiable because not indorsed by the makers-payees. The point was not raised on the motion (to strike). The names of Morris Weinstein and D. Bobker appear twice on the back of the note, and the appellant asserts that when they first signed it was their intention to sign as officers of the corporation, and not as individuals, and thereby bind the corporation. This may be shown by testimony at the trial. Reeve v. First National Bank, 54 N.J.L. 208, 23 A. 853, 16 L.R.A. 143, 33 Am.St.Rep. 675; Simanton v. Vliet, 61 N.J.L. 595, 40 A. 595."

Accordingly, it being undisputed that neither the defendant nor the payee of this note intended defendant to be a maker thereof, defendant cannot be charged as a maker of the note.

6. There being no Federal Statute of Limitations covering this type of action, there is no bar to institution of suit upon this obligation which the United States acquired six months after it was made. United States v. Summerlin, 1940, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283.

7. Where, as here, an endorser waives presentment, demand, protest, no-

tice of protest and non-payment, the holder's failure to take such waived action is no defense to the endorser.

8. Where, as here, a payee of a note, subsequent to the time that he has transferred such note to third parties for value, seizes from the endorser acting as an officer of the maker-corporation, goods which were the subject matter of a chattel mortgage from the corporate maker to the payee securing the note, such action is unwarranted and without legal basis and is no defense to the endorser when sued upon said note by a subsequent holder who neither knew of nor consented to such action.

9. Accordingly, judgment is being entered simultaneously herewith in favor of plaintiff and against defendant Joseph Perpignano for the sum of $279.94, plus interest thereon at the rate of 6 per cent per annum from May 7, 1936.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law,

It is hereby ordered and adjudged that the plaintiff, United States of America, recover from the defendant, Joseph Perpignano, the sum of $279.94, plus interest thereon at the rate of 6 per cent per annum from May 7, 1936, together with plaintiff's costs to be taxed.