486

THE STATE OF NEW JERSEY, BY GROVER .C. RICHMAN, JR., ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. NATIONAL POWER & LIGHT COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

THE STATE OF NEW JERSEY, BY GROVER C. RICHMAN, JR., ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. NATIONAL POWER & LIGHT COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Argued October 18, 1954—Decided November 22, 1954.

*Mr. Newton H. Porter, Jr.*, argued the cause for the appellant.

*Mr. George J. Lasky* argued the cause for the respondent (*Messrs. Riker, Emery & Danzig*, attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal by the State of New Jersey from an order of the Superior Court, Chancery Division, dismissing two complaints against the defendant on the ground that it is no longer a corporation of the State of New Jersey and was not and is not subject to service of process within the State of New Jersey, and therefore the court lacked jurisdiction over the defendant.

On November 16, 1953 the State, through the Attorney-General, filed two complaints seeking to escheat certain personal property allegedly held by the defendant; one action was filed under the 14-year Escheat Act, *N. J. S.* 2A:37–11 *et seq.* (*L.* 1946, *c.* 155 as amended by *L.* 1947, *c.* 357), and one under the five-year Custody Act, *N. J. S.* 2A:37–29 *et seq.* (*L.* 1951, *c.* 304, effective July 13, 1951).

These appeals were certified here on our own motion under *R. R.* 1:10–1(*a*). They were consolidated below for trial and have been consolidated on appeal.

The defendant, National Power & Light Company, was organized as a New Jersey corporation in 1925, as a result of a merger and consolidation of other corporations in this State. On October 31, 1951 it entered into a merger with Phoenix Industries Corporation, a Delaware corporation, under which agreement the name of the surviving corporation was changed to National Phoenix Industries, Inc., a Delaware corporation. The merger became effective upon the filing of the agreement on November 8, 1951 in the offices of the Secretarys of State of New Jersey and of Delaware. Neither Phoenix Industries Corporation nor National Phoenix Industries, Inc., have at any time qualified to do business in New Jersey.

All the assets of the National Power & Light Company were transferred and delivered over to National Phoenix

Industries, Inc., under the merger agreement which provided, *inter alia*, as follows:

"* * * On the effective date of this Agreement, the separate existence of National, except as it may be continued by statute, shall cease, and National shall be merged into Phoenix in accordance with the provisions of this Agreement.

* * * * * * * *

* * * provided, however, that all rights of creditors and all liens upon any property of either of said Constituent Corporations shall be preserved unimpaired, limited to the property affected by such liens at the time of the Merger, and all debts, liabilities, restrictions and duties of said Constituent Corporations, respectively, shall thenceforth attach to the Surviving Corporation, and may be enforced against it to the same extent as if said debts, liabilities, restrictions and duties had been incurred or contracted by the Surviving Corporation."

These provisions of the agreement are in accord and consistent with the relevant provisions of our Corporation Act with respect to the merger of corporations. *R. S.* 14:12–1, 14:12–5. The statute, *inter alia*, states that all real and personal property and all debts due on any account, as well for stock subscriptions as all other things in action, and all and every interest shall vest in the consolidated corporation as effectually as they were vested in the several and respective former corporations.

The actions brought by the State of New Jersey sought to escheat from the defendant the following items, certain declared dividends which had been unclaimed for over 14 years of $4,825.80 on its common stock, of $747.98 on its $6 preferred stock, and $204.75 on its $7 preferred stock. In addition, defendant had outstanding on its books dividends which had been declared but which had remained unclaimed for five or more successive years, but less than 14 years, in the amount of $2,448.19 on its common stock, of $529.72 on its $6 preferred stock, and an aggregate amount unclaimed of $23.22, the identification of which seems to be obscure. The unclaimed dividends of the National Power & Light Company were set up on the books of the National Phoenix Industries, Inc., as obligations of that corporation.

The meaning of the statutory provision, *R. S.* 14:12–5,

seems to be the crux of the case since the State of New Jersey argues that it derivatively stands in the place of the stockholders entitled to these dividends, and that their rights as creditors are preserved against the defendant National Power & Light Company by the provisions of this section.

*R. S.* 14:12-5, *inter alia,* provides:

"All rights of creditors and all liens upon the property of the former corporations shall be preserved unimpaired, and the respective former corporations may be deemed to continue in existence in order to preserve the same, and all debts, liabilities, restrictions and duties of the former corporations shall thenceforth attach to such consolidated corporation, and may be enforced against it to the same extent as if they had been incurred or contracted by it."

The State must necessarily concede that there is no provision here, unlike the dissolution statute, that the corporation shall be continued a "body corporate" for the purposes of "prosecuting and defending suits by or against them" and "of disposing its property and closing its affairs but not to continue in business." Such provisions are found in the sections relating to voluntary dissolution. *R. S.* 14:13-4, 5 and 14. Similar provisions are to be found in the sections relating to involuntary dissolution. *R. S.* 14:14-7, 9; *R. S.* 14:14-16 *el seq.* These sections governing dissolutions are designed to protect creditors from the removal of assets. The continued existence of the dissolved corporation for purposes of suit is necessitated by the reason that the corporation retains ownership of the property out of which any obligation is to be satisfied. Under these sections the trustees in dissolution or the receiver hold the assets of the corporation as a trust fund which is a security for the performance of all liabilities direct or contingent.

The situation dealt with when two corporations merge is entirely different and hence the difference in the statutory provisions. Under this section, as pointed out, all the property of the former corporation vests in the successor corporation and all the liabilities of each become those of the successor corporation. Thus there is no necessity for the continuance of the existence of the merged corporation for

purposes of suit. In a dissolution the assets are gathered together in a trust fund and then distributed to its creditors and stockholders. But when a merger or consolidation occurs the assets are not distributed beyond the reach of creditors but remain with the successor corporation subject to its liabilities and creditors, who may enforce their claims against such assets.

Whether as an abstract or a conceptual proposition a merger can be said to result either in a dissolution of the old corporation or that both corporations are to be continued as a joint or consolidated whole is not determinative of the question here presented, which must be determined by the plain meaning and intent of the statute. It would seem to be indisputable that a corporation ceasing to exist by reason of the merger cannot be sued in the absence of an express provision for the continuance of life for the purposes of suit to enforce claims of creditors and to enforce its own claims against others. As pointed out, our statute contains no such provision and under it the successor corporation succeeds to all assets and it alone may enforce its rights; it alone is liable to the creditors of the merged corporation, and it only may be sued for the enforcement of such rights in accordance with the provisions of the statute.

The statute goes no further than to preserve all rights of creditors of either of the corporations and preserves all liens upon the property of either corporation as against property affected by such liens at the time of the merger, and they are enforceable against the successor corporation to the same extent as if they had been incurred by or contracted for by it and it alone. Any right of action therefore must be enforced in a suit against the successor corporation.

On the other hand, if a right of action is attempted to be enforced against the defendant corporation, the result would be a sterile judgment, unenforceable because by virtue of the provisions of the act and the merger agreement all assets were lawfully transferred to the successor corporation, and it is extremely doubtful that execution can be had against the property of the successor corporation which was not a party

to the proceeding. And for the same reason, if suit were brought in Delaware on such a judgment, such a judgment would not be conclusive under the full faith and credit clause of the Federal Constitution unless it is conceded that the merged corporation is continued in existence for the purposes of suit and as we have found the statute does not do that.

With title to all the assets and property in the successor corporation no judgment as to its property would meet the tests of due process, and while such property as had a situs in this State might be reached by attachment nevertheless the action would be brought against the successor corporation and not the merged corporation.

■ The deficiency in the statute cannot be supplied by judicial construction. In a comparative situation, *R. S.* 14:12–4 relating to franchise taxes, etc., the statute requires that attached to the agreement of merger or consolidation filed with the Secretary of State must be a certificate signed by the Tax Commissioner that all taxes have been paid in order for the merger or consolidation to be effective.

■ *N. J. S.* 2*A*:37–42 is not self-executing and imposes no restriction or penalty for the failure of a person charged therein with the duty to report monies that are escheatable in the custody of a merging corporation and does not have the effect of staying the merger as do the provisions of the act relative to taxes, franchise taxes, etc.

■ While unclaimed funds, which are in the possession of a New Jersey corporation about to merge with a foreign corporation, may be escheatable the remedy for such situation lies in quick and prompt action by the agency involved or by amendment to the statutes to permit the escheat of such funds either before or after the merger.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.