THE STATE OF NEW JERSEY BY THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. UNITED STATES STEEL CORPORATION, A CORPORATION, DEFENDANT-APPELLANT.

Argued February 27, 1956—Reargued September 10, 1956—Decided October 4, 1956.

344

Mr. *Josiah Stryker* argued the cause for the defendant-appellant (*Messrs. Stryker, Tams & Horner,* attorneys).

Mr. *Harold Kolovsky,* Assistant Attorney-General, argued the cause for the plaintiff-respondent (*Mr. Grover C. Richman,* Attorney-General of New Jersey, attorney; *Messrs. David D. Furman,* Deputy Attorney-General, and *Charles J. Kehoe,* Assistant Deputy Attorney-General, on the briefs).

Mr. *Emerson Richards* argued attorney *pro se.*

The opinion of the court was delivered by
BURLING, J. This action was instituted by the Attorney-General of the State of New Jersey, pursuant to *N. J. S.* 2A :37–29 *et seq., L.* 1951, *c.* 304, generally known as the Custodial Escheat Act. The Superior Court, Chancery Division, entered a determination adverse to the defendant United States Steel Corporation and an appeal was taken to the Superior Court, Appellate Division. We certified the cause prior to a review below. *R. R.* 1:10–1(*a*).

STATUTORY AND DECISIONAL BACKGROUND.

In *State by Parsons v. Standard Oil Company,* 5 *N. J.* 281 (1950), affirmed *sub nom. Standard Oil Company v. State of New Jersey,* 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951), the State sought to escheat, among other assets, unpaid wages of former employees of the corporate defendant whose name or whereabouts had been unknown for 14 years or where no claim had been asserted for a similar period of time. The suit was based upon *L.* 1946, *c.* 155, as amended

*L.* 1947, *c.* 357, now incorporated as *N. J. S.* 2*A*:37–11 to 28, inclusive, a statute providing, *inter alia,* for the escheat to the State of personal property of unknown owners.

Standard Oil there interposed the defense of limitations because at the time the right of the State accrued the six-year statute of limitations, *N. J. S.* 2*A*:14–1, had expired upon the owners' right to the wages involved. It asserted a vested right in the defense of limitations and argued that the State could obtain nothing more than the unknown owner had the latter instituted suit at the same time.

■ This court sustained Standard Oil's position on that issue. The court's opinion through Mr. Justice Heher demonstrated that under New Jersey law the expiration of a time limitation upon a right of action not only bars the remedy but bestows upon the debtor a vested property right immune from legislative impairment. Inasmuch as the State's right had accrued after the expiration of limitations it was concluded:

"It is a corollary of the foregoing principles that where all remedy upon the intangibles has been barred by the statute of limitations, there is no property to escheat under the act now before us. The State's right is purely derivative; it takes only the interest of the unknown or absentee owner. If the remedy has been extinguished by the statute of limitations, the State is under like incapacity. The State takes only the creditor's right; it cannot create or revive an obligation that had no existence or had become extinct." 5 *N. J.*, at *page* 298.

And see *State v. Western Union Telegraph Co.,* 17 *N. J.* 149, 151 (1954).

Following this court's decision in the *Standard Oil* case, the Legislature enacted *L.* 1951, *c.* 304, a custodial escheat law. The design of the statute, stated to be an alternative method for escheat of personal property, may be generally described as follows: The State may take into protective custody, among other things, wages held by a domestic corporation which belong to a person unknown, or whose whereabouts is unknown, or whose wages remain unclaimed, for five successive years. *N. J. S.* 2*A*:37–30. Custody of

the funds is procured by serving a copy of a judgment on the corporation or its agent directing that the moneys be turned over to the State Treasurer. *N. J. S.* 2A :37–31. The judgment is obtained through a "summary action" in the Superior Court brought by the State. *N. J. S.* 2A :37–30. The corporation is required to turn over data in its possession which may assist the State Treasurer, who is charged with notifying the various owners, where possible, that their property has been transferred to State custody. *N. J. S.* 2A :37–31, 32. Payment to the State Treasurer by the corporation works a complete discharge which may be asserted as a bar in any proceeding against it by the owner. *N. J. S.* 2A :37–33. If no valid claim to the funds taken into custody is made within a two-year period from the date of notice to the owners the Attorney-General is directed to institute a summary action to escheat the property to the State. *N. J. S.* 2A :37–36. *N. J. S.* 2A :37–42 casts a duty upon "any attorney, surrogate, administrator, executor, or any other person having knowledge or information concerning any escheatable property as defined herein, to notify the Attorney-General * * * within a reasonable time, of the existence of such escheatable property."

This is the first occasion we have had to consider the operative effect of the custodial escheat legislation so far as the six-year limitation statute is concerned. Its constitutionality was upheld against an attack characterizing it as a revenue measure originating in the State Senate, *State v. Thermoid Co.,* 16 *N. J.* 274 (1954) (see 1947 *Constitution, Art.* IV, *Sec.* VI, *par.* 1). The Superior Court, Chancery Division, upheld the statute against a general attack upon the constitutionality of the legislation, *State v. American-Hawaiian S. S. Co.,* 29 *N. J. Super.* 116 (*Ch. Div.* 1953). In addition, the latter case (the opinion of which was made applicable to the case *sub judice*—*Id.,* 29 *N. J. Super.,* at *pages* 121–122) considered the very issue presented here and determined it adversely to the corporate defendant for reasons hereinafter set forth.

That issue will now be developed.

FACTUAL BACKGROUND AND CONCLUSIONS OF TRIAL COURT.

On the effective date of the custodial escheat legislation (July 13, 1951) the defendant, a New Jersey corporation, possessed $276,641.16 in wage moneys which had remained unclaimed for more than five years and which were not yet barred by the six-year statute of limitations. Seventeen months later the State instituted a summary action for custody of these claims. In answering the order to show cause the defendant divided this aggregate of some $276,000 into three classifications:

1—wage claims totalling $148,680.32 upon which the six-year limitation had expired prior to filing of state's complaint;

2—wage claims totalling $1,215.24 upon which the six-year limitation had expired prior to the date upon which the order to show cause was served on defendant;

3—wage claims totalling $126,745.60 upon which the six-year limitation had not expired either on the date of filing the complaint or the date of service on defendant.

State sought and obtained judgment of custody of the entire $276,641.16 in unclaimed wages. Defendant appealed only from that portion of the judgment awarding custody to the State of categories 1 and 2 of the wage claims. It makes no issue upon the State's right to custody of wage claims in category 3.

The parties have stipulated that "but for the operation of the Custodial Escheat Act * * * the defendant would at the time the instant proceeding was commenced, or when process was served upon defendant, as the case may be, have a vested right to the defense of the statute of limitations with respect to the said $148,680.32 (and $1,215.24) of wage claims, as to the owners thereof."

The defendant, in brief, contends that the custodial statute in no way deprives it of the defense of limitations against the State which it might otherwise plead as a bar against the unknown owners. The State argues that its right of action arose prior to the running of the six-year limitation, and although the unknown owners were barred when suit

was commenced or process served on defendant, that fact interposes no obstacle to its right.

The trial court held the defense to be unavailable to defendant because on the effective date of the custodial escheat statute the six-year limitation on the wage claims in dispute had not expired, and on the same date the State acquired a right against which the statute of limitations does not operate. Its holding in this regard is more fully amplified in *State v. American-Hawaiian S. S. Co., supra,* 29 *N. J. Super.,* at *pages* 136–139, a companion case to the instant litigation. The *Standard Oil* case was distinguished on the ground that there the statute of limitations had barred the claims prior to the effective date of the escheat statute (now *N. J. S.* 2A:37–11 *et seq.*).

The questions presented are more easily stated than resolved:

1. Does a plea of the statute of limitations constitute a good defense where limitations on the wage claims have expired before institution of the summary action for custody?

2. Does the custodial escheat law cast a duty upon defendant to report property to which the State has a right of custody?

3. If questions (1) and (2) are answered in the affirmative, is defendant estopped from asserting the defense of limitations for failure to report such property to the Attorney-General?

A cross-appeal has been filed by Emerson Richards, Esquire, the attorney appointed by the Attorney-General to prosecute this action below. The cross-appeal concerns the award of counsel fees by the trial court. This issue will be disposed of following a resolution of the substantive considerations.

## MERITS.

### Question 1.

In *Standard Oil,* limitations had expired prior to the accrual of the State's cause of action. Here limitations have subsequently expired. We said in *Standard Oil* that the State's right was derivative in the sense that the sovereign could obtain nothing more than the unknown owner. If

the latter's remedy is extinguished, his right, for all practical purposes, is extinct, and there is no property subject to escheat. 5 *N. J.*, at *page* 298. The derivative consequence is, in this sense, akin to proceedings in garnishment, where it is fundamental that the garnishee's liability can rise no higher than his liability to the principal debtor; if there is no property in the hands of the garnishee to which the principal debtor may effectively lay claim, there is no garnishable interest. *Russell v. Fred G. Pohl Co.,* 7 *N. J.* 32, 39 (1951).

Limitations operate not against the State *per se,* but against the basic claim of the unknown owner. If, by virtue of limitations, the owner can obtain nothing, the State is under like disability. *State, by Parsons v. Standard Oil Co., supra; State v. Western Union Telegraph, supra.* This is the derivative consequence, long recognized in the law of escheat. *Brown v. United States,* 65 *F.* 2d 65 (9 *Cir.* 1933); *Croner v. Cowdrey,* 139 *N. Y.* 471, 34 *N. E.* 1061 (*Ct. App.* 1893); *Pawlett v. The Attorney-General, Hardres,* 145 *Eng. Rep.* 550 (*Ex.* 1679); *Viscount Downe v. Morris,* 3 *Hare* 394, 67 *Eng. Rep.* 435 (*V. C.* 1844); *cf. Evans v. Brown,* 5 *Beav.* 114, 49 *Eng. Rep.* 520 (*R. C.* 1842). The right of action to escheat or to obtain custody of unclaimed property is not derivative; but what may be obtained by exercise of the right is dependent upon the integrity of the underlying obligation.

"In this case the State is coming into court to assert its derivative, residual rights to the personal property of unknown or absentee owners, *State* [*by Parsons*] *v. Standard Oil Co., supra,* 5 *N. J.* 281, 297 (1950). Its standing is neither greater nor higher than that of the unknown or absentee individual owners. The State as a plaintiff in such circumstances does not stand in any preferred position over any citizen. * * *" *State v. Otis Elevator Co.,* 12 *N. J.* 1, 14 (1953)

We are unable to distinguish the operative effect of limitations in escheat proceedings from custodial proceedings. In both the State's right *per se* is not barred by the expiration of limitations although the derivative consequence renders it worthless.

The State would distinguish (and properly so) the situation where limitations have expired before the sovereign's cause of action accrues (*e. g., State, by Parsons v. Standard Oil*) and where, as here, the right precedes the running of limitations, citing *United States v. Summerlin,* 310 *U. S.* 414, 60 *S. Ct.* 1019, 84 *L. Ed.* 1283 (1940); *United States v. Perpignano,* 86 *F. Supp.* 105 (*D. C. N. J.* 1949); *Adm. of Austrian Property v. Russian Bank for Foreign Trade,* 48 *T. L. R.* 37 (*Ct. App.* 1931); *Lambert v. Taylor,* 4 *B. & C.* 138, 107 *Eng. Rep.* 1010 (*K. B.* 1825).

These cases, although closely in point, are distinguishable. In *United States v. Summerlin, supra,* the Federal Government was assignee of a claim against a decedent's estate. Although it failed to file the claim within the time period fixed by state statute, the bar was held inapplicable to the federal sovereign. In *United States v. Perpignano, supra,* the Government acquired title to a promissory note and subsequently the limitation period expired. The same rationale was applied. In both cases the United States had the exclusive and sole right, acquired prior to the running of limitations, and consisting of the whole title of its assignor or endorser. The same pattern is discernable in *Lambert v. Taylor, supra,* where the Crown acquired title to a promissory note immediately upon the suicide of the payee holder and the limitation expired thereafter and before suit was instituted. But here the State does not have title at the time its right to bring the custodial action accrues, nor is the State's right that of the unknown owner. Indeed, that person may bring suit against the corporate debtor until custody of the fund is given to the State Treasurer, *N. J. S.* 2A:37–33 (excepting, of course, an earlier expiration of limitations) for not until that time is the corporation released from its obligation. And there is no legislative indication that the six-year statute is suspended against the owner at the time the State's right accrues.

*Adm. of Austrian Property v. Russian Bank for Foreign Trade, supra,* is also distinguishable. The Austrian Peace Treaty of 1920, confirmed by Parliament, together with an

Order in Council, conferred upon the Administrator (an agent of the Crown) the right to recover debts within Great Britain owing to Austrian nationals. The six-year statute of limitations on the particular debt in question expired, as here, subsequent to the accrual of the right but prior to suit thereon. The statutory bar was pleaded but held not applicable on the same ground argued here—that the sovereign is not bound by the statute of limitations. Lord Justice Scrutton based his conclusion upon a further point, however, undoubtedly in view of the fact that the Administrator was to exercise his right "as if he were the creditor":

"* * * As I read those provisions in the Order in Council— I do not go through the whole of them—the power to sue is taken away from the creditor and is given to the Administrator, and it is the Administrator alone who can deal with the matter. When, therefore, the objection is taken, which is the only objection raised in this case, that the Statute of Limitations would prevent the creditor from suing, and that the Administrator has only a charge, I make, first, the answer that the Administrator, being an agent of the Crown, under the prerogative is not bound by the Statute of Limitations; secondly, *that the person who is said to be bound by the Statute of Limitations, namely the creditor, was a person who during the period in question could not sue; and I cannot conceive that you can apply a Statute of Limitations which says: 'You have not sued and consequently you are barred' to a case where legislation prevents the creditor from suing, and therefore he is not able to prosecute his right, though the Administrator is given the right to prosecute the action.*" (48 *T. L. R.*, at *p.* 39) (Emphasis supplied)

The case indicates that Austrian creditors were barred from suit not only by the Order in Council but also prior war legislation which gave a moratorium upon the bills of exchange in question. The true rationale of the case, as we understand it, is that the limitation period on the basic obligation was suspended. See 54 *C. J. S., Limitations of Actions,* § 257, *p.* 288. There is no express provision in the Custodial Escheat Act which deprives the unknown owner of his right of action. The indication is clearly to the contrary. See *N. J. S.* 2*A* :37–33. The distinction is fundamental where the derivative concept is applicable.

■ The six-year statute of limitations does not run against the State's right of action; hence there is no occasion to

apply the rule which would exempt it from this defense were its cause lacking the derivative characteristic. Nor is this a situation where the Legislature, upon accrual of the State's right, has suspended limitations on the basic obligation or has precluded the owner prior to summary proceeding for custody from looking other than to the sovereign, or has expressly denied the stakeholder the right to plead the bar of limitations. See, *e. g., N. Y. Aband. Prop. Law, sec.* 1400.

■ The defense of limitations is valid if the expiration of the six-year period has occurred prior to service upon the defendant of the order to show cause. *N. J. S.* 2*A* :37–30 characterizes the suit as a summary action. *R. R.* 4:86–3 and *R. R.* 4:85 define the procedural steps. Not until service of the order to show cause is made on defendant is it apprised of the custodial action. (Summons does not issue. *R. R.* 4:85–3) The State's interest is thus sufficiently exercised and communicated. The unknown owner, should he appear, may then turn to the sovereign.

## *Question 2.*

■ The custodial escheat legislation was enacted approximately one year following this court's decision in the *Standard Oil* case as a supplement to, and in certain particulars amendatory of, the escheat statute involved in that litigation. We have no doubt that the lawmakers intended to provide a means whereby the State might assert its right in timely fashion to overcome the obstacle imposed by limitations. Our attention was called to a portion of the custodial enactment which provides:

"It shall be the duty of any attorney, surrogate, administrator, executor, or any other person having knowledge or information concerning any escheatable property as defined herein, to notify the attorney-general of this state within a reasonable time, of the existence of such escheatable property." *N. J. S.* 2*A* :37–42.

This section gained considerable importance in view of the legislative design and we requested argument on the question

of its applicability to defendant and whether, if applicable, a failure to report would preclude defendant from asserting the defense of limitations.

Defendant contends that the duty to report is cast upon persons in a fiduciary capacity and by the interpretive doctrine of *ejusdem generis,* corporations, not possessing fiduciary characteristics, are not within the terms of the statute. Further, it is said that *N. J. S.* 2A:37–42 applies only where escheatable property is concerned, and has no operative effect upon possessors of property subject to state custody.

We think the contention without merit. The act itself is directed to corporations operating under New Jersey laws, *N. J. S.* 2A:37–30, and to remove any ambiguity as to the inclusion of corporations within the term "persons" *N. J. S.* 2A:37–11 states:

"Unless a different meaning clearly appears from the context, the word, phrase or term 'owner,' 'beneficial owner,' 'person,' 'person having custody or possession,' 'person having any interest,' 'person entitled to,' or any word, term or phrase of similar import, shall mean, include and refer to corporations, companies, associations, societies, firms, partnerships, joint stock companies, fiduciaries of any nature, as well as individuals."

It is most unlikely that the Legislature would exclude this category of stakeholder to which defendant belongs from the duty of reporting. *Cf. State, by Parsons v. National Newark & Essex Banking Co.,* 31 *N. J. Super.* 246 (*Ch. Div.* 1954), where a national bank was considered to be a "person" within the purview of the statute. The duty is to report "any escheatable property as defined herein," *N. J. S.* 2A:37–42, and the custodial scheme itself is termed an alternative method for the *escheat* of personal property whereby the State may take possession of wages which remain unpaid for a period of time. *N. J. S.* 2A:37–29, 30. If defendant is so clearly included in the class to which the State may look for unclaimed wages, how can it be rationally excluded from a requirement so necessary to a seasonable exercise of the sovereign right? Only the invocation of *ejusdem generis*

clouds the internal sense of the statute, and when this is so we need not apply the interpretive rule. *Edwards v. Mayor, etc., of Moonachie,* 3 *N. J.* 17, 23 (1949). The assistance is not called for. *Bass v. Allen Home Improvement Co.,* 8 *N. J.* 219, 226 (1951).

█ Nor do we think that the statute is to be strictly construed so far as stakeholders are concerned. Defendant calls attention to *State v. United States Steel Corporation,* 12 *N. J.* 38, 47 (1953), where it was said:

"It is a well settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject to escheat is resolved against the state."

The statement was made in response to the State's argument that dividends declared by the corporation less than 14 years prior to suit should be subject to escheat under *R. S.* 2:53–17 (now *N. J. S.* 2A:37–13) providing for escheat of personal property after expiration of the 14 year period. We held that dividends which had not attained the 14 year vintage were not subject to escheat until that time, but the declaration of strict interpretation was expressive of an attitude toward the unknown owner rather than the corporate debtor.

## Question 3.

The corporate debtor alone has the information necessary to insure a *bona fide* exercise of the judicial process by the State where it seeks custody of wage claims. Without this knowledge the excursion is a junket, a hit-or-miss proposition, an annoyance to both suitor and defendant.

This defendant concedes that no report was made to the Attorney-General covering the instant wage claims. Had the statutory duty been fulfilled it may be presumed that the State would have sought immediate custody. May the State's right now be foreclosed in view of the defendant's failure to disclose?

In *Grossman v. Young,* 72 *F. Supp.* 375, 378 (*D. C. S. D. N. Y.* 1947), stockholders sought to recover profits which

had been realized by an officer and director from short-term trading in the corporate stock. Their cause of action was based upon certain provisions of the Securities Exchange Act of 1934 which required institution of the suit within two years after the date the profits were realized. The federal statute also required prompt disclosure of facts which would give rise to the action. Suit was commenced over two years after the profits had been realized. The defendant had failed to file monthly reports which would have provided the information necessary to bring the action. In rejecting defendant's contention that the statutory limitation barred plaintiffs' action the court stated:

"To construe the statute as advocated by the defendant would defeat the principal purpose for which the statute was enacted. The provision of subdivision (a) which calls for the filing of monthly reports and the provisions of subdivision (b) which provide a remedy for the recovery of short-term profits are asserted to be complementary. The former provides the information which is essential for the application of the latter. It is incongruous to permit an insider to escape repayment of his profits by compounding his fault in failing to file the required reports."

Nor are we without analogous precedent in New Jersey. In *Noel v. Teffeau,* 116 *N. J. Eq.* 446 (*Ch.* 1934), the defendant, a hit-run driver, had injured the plaintiff. Not until limitations had expired did Noel learn of defendant's identity, although the latter informed the police of his possible involvement. Investigators of defendant's insurance company took pains that Noel remain uninformed. When Noel eventually brought suit the defense of limitations was raised. He turned to equity and secured an injunction. In granting relief, Vice-Chancellor Bigelow noted that the defendant had failed to comply with the Motor Vehicle Laws which required him to give his name and address to the injured party. The purpose of the requirement was said to inform the injured of persons to whom they might turn for possible redress. Plaintiff's inaction was due to lack of knowledge; defendant failed a legal duty to supply the necessary information. The vice-chancellor thought it un-

conscionable to allow defendant to urge the bar of limitations. Similar cases indicate the flexibility with which such equitable considerations are given effect to reach a just result. See, e. g., *Kurry v. Frost,* 204 *Ark.* 386, 162 *S. W. 2d* 48 (*Sup. Ct.* 1942) ; *St. Clair v. Bardstown Transfer Lines, Inc.,* 310 *Ky.* 776, 221 *S. W. 2d* 679, 10 *A. L. R. 2d* 560 (*Ct. App.* 1949). Relief against limitations is given even to owners of lost property to prevent chance enrichment of finders who fail to disclose where there is a duty to speak. *Quimby v. Blackey,* 63 *N. H.* 77 (*Sup. Ct.* 1884) ; *Conditt v. Holden,* 92 *Ark.* 618, 123 *S. W.* 765 (*Sup. Ct.* 1909). *Cf. Restatement, Restitution, sec.* 121 (1937).

Defendant argues that equitable estoppel is generally not invoked to bar the defense of limitations where the defendant's conduct has not been instrumental in the failure of a plaintiff to institute timely proceedings. It is said that the State was free to bring suit at any time and that the record is barren of proof which would implicate defendant in a design to, mislead or to conceal the information from the State.

We are not convinced that defendant's neglect of its statutory duty was the primary reason for delaying suit. Time-consuming search for evidence to justify a proceeding based upon "information and belief" (*R. R.* 4:85–2) may have been a cause for delaying suit. In the last analysis, however, there is no necessity that the doctrine of equitable estoppel be applied within a rigid framework of cause and effect. In *Partrick v. Groves,* 115 *N. J. Eq.* 208 (*E. & A.* 1934), our Court of Errors and Appeals said that in granting equitable relief "the power of equity knows no limit. The court can always shape its remedy so as to meet the demands of justice in every case, however peculiar." The device of estoppel is available to adjust the equities in cases of unjust enrichment. *Holdsworth, "Unjustifiable Enrichment,"* 55 *Law Q. Rev.* 37, 44 (1939). (See *Holt v. Markham,* (1923) 1 *K. B.* 504 (*C. A.*), where the doctrine was employed to disallow a claim based upon an unjust enrichment theory.) The latitude within which the doctrine may serve is in complete consonance with its reason:

"Equitable estoppel in the modern sense arises from the *conduct* of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." 3 *Pomeroy on Equity Jurisprudence* (5th ed. 1941), sec. 802.

Furthermore, there are considerations presented here which more than overcome any objection to the invocation of the estoppel against defendant.

First, the suggestion that the State was free to institute a summary proceeding against defendant at any time whether or not it had knowledge essential to a well founded action cannot be realistically accepted. The custodial legislation affects every corporation operating under the laws of this State. *N. J. S.* 2A:37–30. It is unthinkable that the lawmakers ever intended that summary actions be annually instituted without information and belief against all corporations organized under the laws of this State or under the laws of any other state and authorized to do business in this State, merely to uncover the existence or non-existence of property subject to custodial escheat. Even the most diligent Attorney-General, in the equal administration of the law, could not be expected to accomplish a task of such magnitude. The initial burden was therefore placed in the hands of the stakeholder to report the existence of this property. *N. J. S.* 2A:37–42.

Secondly, statutes of limitations are characteristically considered to be tools of repose. They require that alleged rights be timely asserted and thereby operate to prevent unjust claims. They obviate the difficulties in defending actions against such claims. Death or removal of witnesses, factual obscurity from lapse of time, loss of supporting records are the common handicaps. *Tortorello v. Reinfeld*, 6 *N. J.* 58, 67 (1950); *State, by Parsons v. Standard Oil Co., supra,* 5 *N. J.*, at *page* 295; 53 *C. J. S., Limitations of Actions,*

§ 1, *pp.* 902–903; *Callahan, "Statutes of Limitations—Background,"* 16 *Ohio St. L. J.* 130, 133 (1955). (The period of limitation is often geared to the perishable nature of the proof which normally accompanies a particular claim.) Where, however, the bar is used primarily as a sword rather than a shield and by one who has been responsible to disclose the actionable essentials in the face of a duty to speak, factors of vicarious enrichment become a dominant consideration which we are prone to remedy in equity and good conscience. *Cf. Carrier v. Chicago, R. I. & P. Ry. Co.,* 79 *Iowa* 80, 44 *N. W.* 203 (*Sup. Ct.* 1890); *Twining v. Thompson,* 68 *Cal. App. 2d* 104, 156 *P. 2d* 29 (*Ct. App.* 1945).

This is especially so where property, presumably abandoned, is concerned. Under the doctrine of *bona vacantia* the Crown acquired title to personal property without an owner as an incident of its *jura regalia,* or royal rights. *Dyke v. Walford,* 5 *Moore P. C.* 434, 13 *Eng. Rep.* 557 (*P. C.* 1846). Blackstone found support for the doctrine, among other things, "to provide for the support of the public authority in a manner the least burdensome to individuals." 1 *Bl. Comm.* (*Jones* 1915), 299. These royal rights now belong to the people of New Jersey. *Arnold v. Mundy,* 6 *N. J. L.* 1, 78 (*Sup. Ct.* 1821), exercisable by their Legislature to bring abandoned and unclaimed property within the title of the sovereign and used for the public benefit. See *Id.,* at *p.* 71.

Blackstone's rationale has been paraphrased many times since. We refer to but two statements. They adequately convey the reason why the defendant here is in no position to assert the bar of limitations after failing to report the information which might well have placed custody of this money in public hands.

In *Standard Oil Co. v. State of New Jersey, supra,* 341 *U. S.,* at *pages* 435–436, 71 *S. Ct.,* at *page* 827, 95 *L. Ed.,* at *pages* 1086–1087, Mr. Justice Reed observed:

"As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to con-

stitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons. Such property thus escapes seizure by would-be possessors and is used for the general good rather than for the chance enrichment of particular individuals or organizations."

And in *State, by Van Riper v. American Sugar Refining Co.*, 20 *N. J.* 286, 297 (1956), Mr. Justice Jacobs, speaking for a unanimous court, stated:

"New Jersey's quest for legitimate revenues to be used for the good of all of its citizens is in nowise to be condemned and its right to the unclaimed dividends is admittedly superior to that of the corporation which had custody but no moral or legal claim to their retention."

We conclude that the defense of limitations may be pleaded by the defendant in the custodial action, but failure to report property subject to custodial escheat pursuant to *N. J. S.* 2A:37–42 within a reasonable time so as to seasonably permit the Attorney-General to institute action therefor will undermine the defense.

That portion of the judgment appealed from will be affirmed for the reasons stated in this opinion.

## Cross Appeal.

The attorney appointed by the Attorney-General to prosecute the present suit was awarded a counsel fee of $7,500 which he considered to be inadequate. A cross-appeal was filed protesting the judgment in this regard and is opposed by the State, through officials of the Attorney-General's department who argued the cause before this court. We are of the opinion that the cross-appeal was properly taken despite the State's protestation. It is within the court's province to award counsel fees when there is a fund in court, *R. R.* 1:9–3 and 4:55–7(*b*); *State v. Otis Elevator Co.*, 12 *N. J.* 1 (1953). *N. J. S.* 2A:37–30 and 35 remove any impediment which might otherwise exist in compensating the attorney representative of the State. See *R. S.* 52:17A–13. A lawyer's fair compensation is grounded upon many considerations,

*Canon* 12 of the *Canons of Professional Ethics,* each of which may properly receive greater or less emphasis as the nature of the particular case warrants. Among these considerations are the time and labor involved, the nature of the issues and the requisite skill necessary to properly conduct litigation thereon, the amount involved in the controversy and the benefit resulting to the client. *Canon* 12, *supra;* see also *Fountain v. Booth & Flynn, Ltd.,* 123 *N. J. L.* 422 (*Sup. Ct.* 1939) ; *Gardner v. Baldi,* 24 *N. J. Super.* 228 (*Ch. Div.* 1952). The services performed by the cross-appellant over a period of two years have been reviewed in the light of these considerations. The recommendations of the Attorney-General in establishing a standard of compensation have also received our attention. We agree with that official that the scale "must be applied in a flexible manner."

██ Based upon a review of the record submitted on this point we are of the opinion that the cross-appellant is entitled to a compensation of $10,000.

The motion to dismiss the notice of the cross-appeal is accordingly dismissed and that portion of the judgment covered by the cross-appeal is reversed. Judgment awarding a fee of $10,000 to the cross-appellant will be entered in this court.

HEHER, J. (dissenting). *L.* 1951, *c.* 304, now *N. J. S.* 2A :37–28 *et seq.,* referred to as the "Custodial Escheat Act," is to be enforced as written.

Conceding that "here the State does not have title at the time its right to bring the custodial action accrues," and the "State's right" is not "that of the unknown owner," and "that person may bring suit against the corporate debtor until custody of the fund is given to the State Treasurer, *N. J. S.* 2A :37–33 (excepting, of course, an earlier expiration of limitations) for not until that time is the corporation released from its obligation," the holding nevertheless is that "the defense of limitations may be pleaded by the defendant in the custodial action but failure to report property subject to custodial escheat pursuant to *N. J. S.* 2A :37–42 within

a reasonable time so as to reasonably permit the Attorney-General to institute action therefor will undermine the defense."

But *N. J. S.* 2*A*:37–42 was not so designed. It came into being as *section* 22 of *L.* 1951, *c.* 304, amending and supplementing the original Escheat Act of 1946, *c.* 155, entitled "An Act providing for the escheat of certain unclaimed personal property." *Section* 1 of the act of 1946, as amended in 1947, now *N. J. S.* 2*A*:37–11, defines "personal property" within the intendment of the act. *Section* 2 provides for the escheat of "personal property" left by an intestate without heirs or known kin capable of inheriting the same. And *section* 3 provides for the escheat of the "personal property" of a person "unknown" or whose whereabouts is "unknown," or remaining "unclaimed" for 14 successive years. These sections, 1, 2 and 3, now *N. J. S.* 2*A*:37–11, 12, 13, embody the only definition in the statute of "escheatable personal property," and here is to be found the significance of the term "escheatable property" in *section* 22, now *N. J. S.* 2*A*:37–42. *Section* 5, now *N. J. S.* 2*A*:37–30, makes provision for a proceeding by the State to obtain custody of moneys payable as wages, dividends or interest unpaid for five successive years, intangibles not then escheatable but which may become escheatable if unclaimed for two years after possession taken "for safekeeping" and notice given to the "owners" by the State Treasurer.

*N. J. S.* 2*A*:37–42 is not in terms applicable to the intangibles not yet escheatable in law and in fact, but subject to sovereign custody if the State so elects, and later escheat if unclaimed for two years after custody taken by the State Treasurer and notice to the creditor. The words used are inapt to that end. It is fairly to be presumed that if the Legislature had intended to lay upon the corporate debtor the positive duty of notice to the State of such potentially escheatable intangibles within the sixth year, with default tolling the statute of limitations, it would have said so in clear and indubitable terms. If it had so provided, and the State thereby acquired the right now asserted, then the

debtor could not make payment of the debt or obligation to the creditor without the State's consent, or judicial process on notice.

A settled rule of interpretation comes into play here. Plainly, the words "attorney, surrogate, administrator, executor" in *N. J. S.* 2A:37–42 are not inclusive of corporate debtors of the particular class. To hold that the concluding general words "or any other person" cover such corporate debtors in these circumstances would be to disregard the interpretive maxim *noscitur a sociis* and the corollary rule of *ejusdem generis* embodying the principle that associated words and phrases may be looked to for the significance of doubtful words, and where general words follow particular words, in an enumeration describing the subject, the general words are deemed to comprehend only objects similar in nature to those enumerated. The word "other" will generally be read as "other such like," and thus be restrictive of the meaning of the general terms to those *ejusdem generis,* thereby giving effect both to the particular and the general words. The particular words are treated as indicating the class, and the general words as embracing all within the class although not specifically mentioned. Is it not so that in sound reason and logic the antecedent special words are essentially restrictive; otherwise, they would have no meaning. *In re Armour's Estate,* 11 *N. J.* 257 (1953).

It is not within the judicial province to supply a *casus omissus;* such is the exclusive function of the legislative authority. An omission in a statute cannot be supplied by construction. "[I]f a particular case is omitted from the terms of a statute, even though such a case is within the obvious purpose of the statute and the omission appears to have been due to accident or inadvertence, the court cannot include the omitted case by supplying the omission. This is equally true where the omission was due to the failure of the legislature to foresee the missing case." *Crawford's Statutory Construction* (1940), *sec.* 169.

The Custodial Escheat Law is not self-executing. It is purely permissive. It does not effect an automatic transfer

of possession of the intangibles to the State. The State "may," by this "alternate method," *N. J. S.* 2A:37–29, "take into its protective custody" property of the given class. Custody is obtained, *N. J. S.* 2A:37–30, 31, by service upon the corporate debtor of a copy of a "summary judgment" in an action brought by the State in the Superior Court, directing the transfer of the moneys to the State Treasurer for safekeeping. The corporation is then required (note the specific provision here) to turn over all information in its possession that may be of use to the State Treasurer in giving notice to each such creditor, *N. J. S.* 2A:37–32, that the moneys had been transferred to State custody "as his property, for [his] benefit," and if the moneys remain unclaimed for two years, "an action will be instituted to escheat such moneys to the state. * * *" The payment of the moneys to the State Treasurer, *N. J. S.* 2A:37–33, operates as a discharge pleadable in bar of any action brought by the creditor against the corporation.

But until then the corporate debtor has the benefit of every defense, including the bar of the statute of limitations, to an action by the creditor. All this is clear beyond peradventure. The State may elect not to take custody of such credits, or it may delay action indefinitely. Until it does act, the legal relation between the corporation and its creditor remains unchanged; and if, meanwhile, the statute of limitation operates to bar action on the claim, there is no escheatable property. The corporate debtor has then acquired a vested right to the defense of the statute, proof against legislative impairment or judicial annulment. *State, by Parsons v. Standard Oil Company,* 5 *N. J.* 281 (1950), affirmed *sub nom. Standard Oil Company v. State of New Jersey,* 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951).

Such is the statutory scheme. It is to be borne in mind that we are concerned here with the debtor-creditor relationship and the resultant choses in action classified as *bona vacantia.* There is no moral ground in favor of the sovereign's revenue which would deny the debtor the defense of the statute of limitations. The operation of this statute of

repose is not to be arrested unless the Legislature has so ordained in explicit terms; and such is not the case here. We are not free to supply the means of overriding the limitation to remedy what we conceive to be an inadvertent or unwise omission or to comport with our concept of sound economic policy.

If the contrary view be accepted, the failure of the State to take custody for "safekeeping," as the Custody Act permits, would defeat the statute of limitations as a defense. The State may choose to enforce the right, or it may refrain from action. See *Hamilton v. Brown*, 161 *U. S.* 256, 16 *S. Ct.* 585, 40 *L. Ed.* 691 (1896).

Under the common law, to complete title by escheat it was necessary that the lord make entry on the lands and tenements escheated, or sue out a writ of escheat. *Annotation,* 40 *L. Ed.* 691. See also 19 *Am. Jur.* 389. Action is necessary to reduce the property to the possession of the State; and until then the debtor-creditor relation continues unchanged. Before escheat the State has no title, but a mere possibility of interest.

It is established principle that escheats are not favored in the law; and any doubt as to whether the property is subject to escheat is resolved against the state. *State, by Richman v. National Power & Light Co.,* 16 *N. J.* 486 (1954); *Taylor v. Benham,* 5 *How.* 233, 12 *L. Ed.* 130 (1847); *People ex rel. Attorney-General v. Stockton Saving & Loan Society,* 133 *Cal.* 611, 65 *P.* 1078 (*Sup. Ct.* 1901). See also 19 *Am Jur.* 387.

And see the holding in *State, by Richman v. National Power & Light Co., supra,* that the statute is not self-executing and "imposes no restriction or penalty" for failure to perform the duty of notice.

The doctrine of estoppel to prevent unjust enrichment has no pertinency here.

I would reverse the judgment.

BRENNAN, J., joins in this opinion.

JACOBS, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—Justices HEHER and BRENNAN—2.