47 N.J. Super. 248 (1957)
135 A.2d 698
THE STATE OF NEW JERSEY, BY THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
REPUBLIC STEEL CORPORATION, A CORPORATION, DEFENDANT. EMERSON RICHARDS, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1957.
Decided November 1, 1957.
*249 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Emerson Richards, appellant, argued the cause pro se.
Mr. David M. Satz, Jr., Deputy Attorney-General, argued the cause for respondent State of New Jersey (Mr. Grover C. Richman, Jr., Attorney-General, attorney; Mr. Charles J. Kehoe, Deputy Attorney-General, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Emerson Richards appeals pro se from those parts of judgments entered in the Chancery Division awarding him counsel fees for legal services performed as attorney for the State in two escheat cases, claiming the awards are inadequate.
On May 13, 1952 the former Attorney-General designated appellant as State's attorney to prosecute an action under the Custodial Escheat Act, N.J.S. 2A:37-29 et seq. (hereinafter called the "custody case"), to obtain custody of funds in the possession of defendant Republic Steel Corporation. On July 10, 1952 he was appointed to institute an action for the escheat of funds against the same defendant under the 14-year Escheat Act, N.J.S. 2A:37-11 et seq. (hereinafter called the "escheat case"). Pursuant to such appointment and upon information furnished by the escheator, appellant on November 25, 1953 commenced both actions by way of complaint in a summary manner under the statutes. After many continuances  a usual occurrence in escheat cases, necessary to enable the defendant corporation to assemble and analyze a large volume of records, and to reduce them *250 to schedules  defendant filed answers in the custody case on February 11, 1955, and in the escheat case on March 18, 1955. It subsequently amended its answers.
On October 4, 1955 the present Attorney-General wrote to appellant terminating his services for the State in both actions, as well as in several other cases not here in issue. After notice and hearing the Chancery Division entered an order on November 10, 1955 substituting the Attorney-General as attorney for the State in place of appellant. Thereafter extensive negotiations were commenced and resolved relating to two main questions. It was decided to let the question of the validity of the statute of limitations defense in the custody case abide the outcome of State v. United States Steel Corp., 22 N.J. 341 (1956), where the identical issue was presented. The only remaining problems concerned the escheat or custody of certain of defendant's securities in the possession of two banks: (1) could the State obtain absolute escheat of the securities in the escheat case, and (2) could it gain custody of unclaimed dividends in the custody case? From an examination of the affidavits of services filed by the Attorney-General, considered together with those of the attorney for defendant, it appears that the Attorney-General performed the following services after the order of substitution: a review of the amended answers reporting the finding of additional personal property subsequent to the filing of the original answer; preparation for pretrial, which included the pretrial data and conferences that resulted in the entry of pretrial orders in the escheat and custody cases; preparation of a proposed stipulation of facts for trial; review and examination of complicated written instruments and securities upon which the right of ownership questionably in defendant's custody and control depended; conferences with defense counsel and the attorney for a New York trust company relative to the right of ownership of these securities; preparation and study of a proposed compromise to settle the State's claims respecting such securities, leading to an ultimate settlement; hearing in the trial court at which the compromise settlement *251 was approved; review and study of defendant's supplemental amended answer; conferences with defendant's attorney and preparation of findings of fact and conclusions of law for final judgment.
Appellant filed short affidavits of services rendered as attorney for the State, requesting $1,826.37 counsel fee in the escheat case (the State escheated $15,763.69 in that action), and $8,756 for services rendered in the custody action (the State here took custody of $165,227.41). Following out a past practice of advising the court as to the fees that might be allowed, the Attorney-General then recommended that appellant be awarded $500 in the escheat case and $1,750 in the custody action. At the oral argument respecting fees, appellant submitted a supplemental affidavit of services listing conferences he had attended or which had been covered for him in the cases in question as well as others. This affidavit dealt with services for the period from February 9, 1951, some 15 months before his appointment to prosecute the Republic Steel escheats, until September 21, 1956, almost a year after his discharge. The trial court questioned appellant at some length respecting the services he had rendered, and especially sought to determine whether he was seeking compensation for work performed in other cases or that had been rendered either prior to his appointment or following his discharge. The court also heard the Deputy Attorney-General and the attorney for defendant, and then directed the former to submit an affidavit detailing the work performed by the Attorney-General subsequent to the time of the order of substitution. This was done, and appellant took the opportunity to file an additional supplemental affidavit.
After considering the several affidavits of service, including those presented by counsel for defendant, and hearing argument, the court arrived at its independent determination and awarded appellant $750 in the escheat case and $2,500 in the custody case.
There is no longer any question that counsel fees may be allowed in both escheat and custody cases because *252 of the existence of a fund in court. R.R. 4:55-7(b); State v. Otis Elevator Company, 12 N.J. 1 (1953); State v. United States Steel Corp., above, 22 N.J. 341 (1956). The amount of such award, however, rests within the sound discretion of the trial court, R.R. 4:55-7(b), and absent a manifest misuse of that discretion, an appellate court will not disturb the allowance. In re Broad St. National Bank of Trenton, 37 N.J. Super. 171, 174 (App. Div. 1955); In re Bloomer, 43 N.J. Super. 414, 416 (App. Div. 1957), certification denied 23 N.J. 667 (1957).
We have recently had occasion to consider in some detail the standards by which trial courts are to be guided in awarding fees payable from funds in court, and we need not repeat what was said by us in In re Bloomer, 37 N.J. Super. 85, 94 (App. Div. 1955). The matter has also been considered in In re Wharton, 47 N.J. Super. 42 (App. Div. 1957); Westinghouse Electric Corp. v. Local No. 449, etc., 23 N.J. 170 (1957); Gardner v. Baldi, 24 N.J. Super. 228 (Ch. Div. 1952), and in State v. United States Steel Corp., above, 22 N.J. at page 360 et seq.
We note the absence of specific findings of fact and conclusions of law in the trial court with respect to the counsel fees in question. However, there is sufficient information in the various affidavits and in the testimony adequately to inform us as to just what services were rendered and when. Contrast In re Bloomer (37 N.J. Super. 85) and In re Wharton, above. Exercise of our original jurisdiction is proper and advisable. R.R. 1:5-4(a).
Appellant refers us to a schedule of fees recommended for the guidance of the Chancery Court on March 17, 1954 by the present Attorney-General, and which forms the basis for the fees he requested. This scale has always been considered merely advisory, and has been applied in a most flexible manner, State v. United States Steel Corp., above, 22 N.J. at page 361. That this is so is not only supported by the schedule of fees allowed in different *253 escheat cases, set out in the respective briefs, but directly reflects the experience of the writer of this opinion when he sat in the trial of escheat cases. It is interesting to note that in the United States Steel case, which involved an escheat of almost $300,000, the present appellant was allowed only $10,000, far less than the 10% which he advocates as one of the guides (the Attorney-General's schedule is the other) for admeasuring compensation in this case. The Supreme Court there indicated that the award was based upon such general considerations as "time and labor involved, the nature of the issues and the requisite skill necessary to properly conduct litigation thereon, the amount involved in the controversy and the benefit resulting to the client." That listing is not exclusive, as is indicated in the cases we have cited above.
In this case, appellant refers to the fact that he was the author of New Jersey's escheat laws and attorney in the pilot case argued before both the New Jersey Supreme Court and the United States Supreme Court, State v. Standard Oil Company, 5 N.J. 281 (1950), affirmed 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), where he received only $200 for extended services required in resolving the many difficult questions presented by that litigation. However, he admits that the $50,000 award given him in another escheat case involving the United States Steel Corporation, fully compensated him for all his past services and for cases where there were little or no escheatable funds, and hence no fee or a merely nominal award.
An examination of the fees allowed appellant in the large number of actions he was assigned to prosecute under the Escheat Act, N.J.S. 2A:37-11 et seq. (28 in number), and the Custodial Escheat Act, N.J.S. 2A:37-29 et seq. (93 in number), reveals that he has been reasonably compensated for his services on behalf of the State, whether considered on a case-by-case basis or in toto. His fees in the escheat cases totalled almost $74,000, and in the custodial escheats almost $42,000 in some six years of service.
*254 But we turn our attention to the specific cases before us. Appellant cannot be compensated for the work he did in past cases, or for the experience he gained there and which he claims is reflected in the instant escheat actions. Skill and experience is only one factor to be considered in assessing the amount to be allowed for services in a particular case. What is important in the present cases is that appellant never completed them, having been called upon by court order to turn the litigation over to the Attorney-General in November 1955. Most of the work up to that time was of routine nature, presenting no special effort or the solution of any particularly serious legal problems. The really substantial legal services were those performed after the substitution of counsel.
We have carefully examined appellant's supplemental affidavit of services which sets out 131 dates when there were consultations, conferences or hearings. 31 of them predate his appointment as counsel for the State in these cases, and 14 postdate his removal. Of the remaining 86 we note that only 10 are specifically designated as Republic Steel matters; quite a few represent consultations between the escheator and defendant's counsel, and a number are labeled "hearing and consultation" among appellant, his office associate and the escheator, with no reference to the cases at hand.
From the entire record we conclude that appellant's efforts before the substitution of present counsel for the State called for a minimum of effort; in fact, most of his services were merely nominal. The great bulk of the work was done by the substituted deputy attorney-general. That defendant's attorney received $1,250 in the escheat action, compared to appellant's $750, and $6,500 in the custodial action, compared to appellant's $2,500, is of no moment. The allowances to defense counsel are reasonably supported by the services he rendered, for as in almost every escheat case where the State calls upon defendant to account for escheatable funds, defendant had the laboring oar.
*255 We conclude that the Chancery Division judge did not abuse his discretion in his award of counsel fees to appellant, and the judgments are affirmed.